807 F.2d 1433
 LITTLE EARTH OF THE UNITED TRIBES, INC., a Minnesota
Nonprofit Corporation, and Little Earth Tenants'
Committee, Appellees,
v.
UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT,
Samuel R. Pierce, Jr., in his capacity as
Secretary, United States Department of
Housing and Urban Development,
(HUD), Appellant,
John Doe and Mary Roe, Agents and Officials of HUD, and
Donald Omodt, in his capacity as Sheriff of Hennepin County.
 No. 85-5371.
 United States Court of Appeals,
Eighth Circuit.
 Submitted March 14, 1986.
Decided Dec. 30, 1986.
 
 Mark B. Stern, Washington, D.C., for appellant.
 Randall Smith, Minneapolis, Minn., for Little Earth.
 Alan I. Silver, St. Paul, Minn., for Westminster Corp.
 Before HEANEY, JOHN R. GIBSON and McMILLIAN, Circuit Judges.
 JOHN R. GIBSON, Circuit Judge.
 
 
 1
 Samuel R. Pierce, Jr., Secretary of the United States Department of Housing and Urban Development (HUD), appeals from three district court[1] orders requiring HUD to fund rehabilitation of the Little Earth of United Tribes multi-family rental project (Little Earth). HUD argues that the district court was powerless to order HUD to fund Little Earth's rehabilitation and that the National Housing Act does not obligate HUD to fund the rehabilitation. HUD further contends that its decision not to expend further funds is a rational exercise of its discretion, judicially unreviewable under the Administrative Procedure Act. Little Earth of United Tribes, Inc., and the project's court appointed receiver, Westminster Corporation, argue primarily that HUD-funded rehabilitation is required by a district court order, dated November 8, 1983, from which no appeal was taken; that the National Housing Act authorizes the court to direct rehabilitation; and, that because HUD submitted itself to the court's equitable power, principles of waiver and estoppel prevent HUD from questioning the court's authority. We affirm the district court's judgment ordering HUD to fund Little Earth's rehabilitation.
 
 
 2
 Little Earth is a 212 unit low- and moderate-income housing project in Minneapolis. The project was financed with a loan secured by a $4.5 million mortgage insured by HUD under section 236 of the National Housing Act.[2] In June 1975, the loan went into default, and the insured lender assigned the mortgage to the government in exchange for $4.5 million in insurance benefits.
 
 
 3
 In 1982 HUD scheduled a non-judicial foreclosure sale of Little Earth. The project owner and its tenants brought suit to enjoin foreclosure based on various administrative and civil rights claims. The district court, in a series of orders, granted HUD summary judgment on all of the plaintiffs' administrative claims and some of the plaintiffs' civil rights claims, enjoined foreclosure pending resolution of the remaining civil rights claims, and granted HUD's motion for the appointment of a receiver. Little Earth of United Tribes, Inc. v. HUD, 584 F.Supp. 1287 (D.Minn. June 27, 1983); 584 F.Supp. 1292 (D.Minn. Aug. 15, 1983); 584 F.Supp. 1301 (D.Minn. Aug. 19, 1983).
 
 
 4
 HUD requested a receiver to protect its interest in Little Earth, which was subject to over $100,000 in overdue utility bills and faced imminent cut-offs of water, sewer, and gas services. The district court moved carefully and deliberately in appointing a receiver. It analyzed a series of statements from the parties and potential receivers before entering an order on October 7, 1983, appointing as receiver Westminster Corporation, a for-profit housing management firm and subsidiary of Community Development Corporation, a non-profit housing developer. Westminster took control of the project on December 1, 1983.
 
 
 5
 The outcome of this appeal hinges largely on the meaning of the district court's order, dated November 8, 1983, that sets forth the terms and conditions of the Westminster receivership. Prior to the issuance of the November 8 order, the question of whether HUD was authorized and would be required to fund Little Earth's rehabilitation was thoroughly discussed in memoranda filed with the court and correspondence between the parties. In comments filed with the court regarding the terms and conditions of the receivership, HUD asserted it was authorized to fund repairs necessary to protect the health and safety of Little Earth's tenants. Westminster stated that it required funds for Little Earth's rehabilitation.
 
 
 6
 The parties submitted a joint proposed order describing the terms of the receivership. Westminster also filed proposed alternative provisions. One of these alternative provisions, which ultimately became subsection 10(g) of the court's November 8 order, authorizes Westminster "[t]o contract for physical rehabilitation of the project which Westminster deems necessary to begin returning the project to decent, safe and sanitary condition which will meet quality standards generally accepted in the housing industry." HUD opposed this provision, arguing that it would compel HUD to exceed its statutory authority and fund what would amount to full-scale rehabilitation of Little Earth.
 
 
 7
 After considering the parties' proposed provisions and comments, the district court issued its November 8 order, outlining the terms and conditions of the receivership and detailing the repair and rehabilitation requirements. Three provisions are relevant to this appeal. The first is paragraph 10, subsections (f) and (g), which authorizes Westminster to engage in specific acts of repair and rehabilitation.[3] HUD agreed to the inclusion of subsection 10(f), but strongly opposed subsection 10(g). The second relevant provision is paragraph 11, which, Westminster contends, requires HUD to fund all repair and rehabilitation encompassed in paragraph 10, subsections (f) and (g).[4] The third relevant provision is paragraph 6, which governed the advancement of funds prior to Westminster's assumption of full control on February 1, 1984.[5]
 
 
 8
 Westminster began rehabilitating Little Earth in the spring of 1984. Until summer 1985, HUD voluntarily advanced funds for repair and rehabilitation and added these advances to the debt attributable to Little Earth. This debt has grown from $5 million to $11 million. When the receiver was appointed, the cost of necessary repairs to the project was estimated at between $1.5 million and $2.8 million. In January 1985, this estimate reached $4.8 million. By May 1985, Westminster's estimate of the total cost was $6.8 million.
 
 
 9
 In May and early June 1985, HUD and Westminster conducted settlement negotiations, seeking to reach an agreement under which HUD would acquire Little Earth and then resell it to an entity controlled by Westminster's parent corporation, with resident Native Americans controlling Little Earth's governing board after four or five years. The negotiations were unsuccessful. On July 11, 1985, HUD filed a motion to limit Westminster's rehabilitation expenditures. HUD argued that Westminster had exceeded its authority under the November 8 order and that further voluntary advances by HUD were unauthorized under section 207(k) of the National Housing Act.[6] At that time HUD had provided Westminster nearly $3.2 million for construction advances and over $500,000 for operating advances.
 
 
 10
 On August 5, 1985, the district court entered an order clarifying Westminster's authority to contract for Little Earth's rehabilitation, as provided in the November 8, 1983 order. The August 5 order outlined a construction schedule under which the remaining rehabilitation would be completed by March 1, 1986 at a cost of over $2 million. This order was clarified by an order dated August 14, 1985.
 
 
 11
 HUD informed Westminster on August 15, 1985 that HUD did not read the August 5 order as requiring HUD to pay for rehabilitation. HUD was unwilling to advance money for rehabilitation work done after August 15, except for certain items and necessary emergency repairs.
 
 
 12
 The court entered an order on September 5, 1985, directing HUD to pay all outstanding invoices for architectural and engineering fees and all such future fees that did not exceed seven percent of the total rehabilitation costs.
 
 
 13
 On September 12, 1985, the district court learned that HUD refused to pay Westminster's outstanding invoices. The court issued an order, sua sponte, directing HUD to pay all of Westminster's outstanding invoices by September 20, 1985, and to pay all future rehabilitation expenses within twenty days after receipt of invoice.
 
 
 14
 On September 17, 1985, HUD sought to stay the portions of the September orders directing payment of outstanding invoices and moved for reconsideration of the September 12 order. The court denied the motion for stay and indicated it would rule on the motion for reconsideration following a future hearing.
 
 
 15
 HUD then filed a petition with this court on September 20, 1985, which led to the entry of a partial stay of the district court's September 12 order and a direction that, pending the district court's hearing, HUD was not required to pay Westminster's outstanding invoices, except those incurred in making Little Earth habitable. This court also directed the district court to expedite proceedings on the pending motions.
 
 
 16
 The district court then heard the motions and entered its findings of fact, conclusions of law, and order on October 3, 1985. The court concluded that the law of the case doctrine and principles of estoppel precluded HUD from contesting the court's November 8, 1983 order; that HUD acted arbitrarily and capriciously in interpreting its own regulations and the court's prior orders; that section 207(k) of the National Housing Act authorizes and, in this case, requires HUD to fund the rehabilitation; and, that the court's equitable powers authorized it to order such funding. Therefore, the court ordered HUD to pay all existing invoices and fund all future scheduled rehabilitation.
 
 
 17
 HUD now appeals the district court's orders of September 5, September 12, and October 3, 1985. HUD limits its appeal to the district court's order that HUD fund all future scheduled rehabilitation.
 
 
 18
 HUD contends it is only a mortgagee seeking to foreclose; it has neither the obligation nor the authority under the National Housing Act to fund Little Earth's future rehabilitation. HUD further argues that, despite its request for a receivership and despite the court's preliminary enjoinment of foreclosure, the district court lacked the equitable power to require HUD to fund Little Earth's rehabilitation. Finally, HUD asserts that its decision not to fund further rehabilitation is a rational exercise of its discretion, which is judicially unreviewable.
 
 
 19
 We believe an analysis of the parties' actions and the court's orders, which at first glance leave this appeal mired in complexity, leads this court to a comparatively simple conclusion: the law of the case doctrine binds the parties to the unappealed district court orders of November 8, 1983, August 5, 1985, and August 14, 1985.
 
 I.
 
 20
 HUD did not appeal from either the district court's November 8, 1983 order, or the orders of August 5 and 14, 1985, which clarified the November 8 order. Westminster contends that the November 8 order empowers Westminster to rehabilitate Little Earth and requires HUD to fund rehabilitation. Thus, Westminster argues, the issues of whether HUD was statutorily authorized to fund the rehabilitation and whether the court had the power to order HUD to fund the rehabilitation were raised and answered in the November 8 order. Consequently, HUD's present appeal is an untimely collateral attack on the district court's November 8 order, which is now the law of the case.
 
 
 21
 HUD contends that the law of the case doctrine does not apply for essentially two reasons. First, HUD argues that the November 8 order (as well as those orders in August 1985 clarifying the November 8 order) did not raise the issues of whether HUD was statutorily authorized to fund Little Earth's rehabilitation and whether the district court was empowered to require HUD to fund rehabilitation. These issues, HUD argues, were initially addressed by the district court in the orders from which HUD now appeals. Second, HUD maintains that even if the November 8 order did require HUD to fund Little Earth's rehabilitation, "changed circumstances" prevent application of the law of the case doctrine.
 
 
 22
 We first consider the meaning of the district court's November 8 order. The law of the case doctrine applies to issues implicitly decided in earlier stages of the same case. Gross v. United States, 723 F.2d 609, 611 n. 1 (8th Cir.1983); see also Bracewell v. Nicholson Air Services, Inc., 748 F.2d 1499, 1504 (11th Cir.1984); Daly v. Sprague, 742 F.2d 896, 900-01 (5th Cir.1984); Walston v. School Board, 566 F.2d 1201, 1205 (4th Cir.1977). Accordingly, we must determine whether the November 8 order requires HUD to fund Little Earth's rehabilitation, thus necessarily implicating the issues of whether the court was empowered to order and HUD was authorized to provide funding for the rehabilitation. We conclude that the November 8 order requires HUD to fund Little Earth's rehabilitation.
 
 
 23
 Subsection 10(f) of the November 8 order authorizes Westminster to make specific repairs to Little Earth in order "to protect the health and safety of the tenants, preserve the project, prevent deterioration and to bring all dwelling units into a condition of habitability." Subsection 10(g) further empowers Westminster "[t]o contract for physical rehabilitation of the project which Westminster deems necessary to begin returning the project to decent, safe and sanitary condition which will meet quality standards generally accepted in the housing industry." These subsections are immediately followed by the key provision in paragraph 11, which states:
 
 
 24
 When Westminster determines that it will be necessary for HUD to advance funds under this order, Westminster shall submit a written request to HUD with appropriate documentation, and provide copies of the request to the court and the plaintiffs. HUD shall promptly review the request and take action appropriate under this order.
 
 
 25
 In analyzing the November 8 order, we apply ordinary rules of construction. The order should be viewed as a whole, and an interpretation that gives effect to all parts of the order will be preferred over one that leaves portions of the order meaningless or insignificant. Johnson Controls, Inc. v. City of Cedar Rapids, 713 F.2d 370, 374 (8th Cir.1983) (citing cases). When paragraph 11 is considered with paragraph 10, subsections (f) and (g), we can only conclude that the order requires HUD to fund all repair and rehabilitation encompassed in these two subsections. If paragraph 11 only provided for voluntary, as opposed to mandatory, funding at HUD's discretion, both subsections 10(f) and 10(g) and paragraph 11 would be inconsequential. Although encompassed in a binding court order issued after weeks of adversarial negotiations, subsections 10(f) and 10(g) would merely allow Westminster to repair and rehabilitate Little Earth without assurance of HUD's assistance; paragraph 11 would allow HUD to volunteer funds if it so desired. We cannot conclude that the court intended or the parties understood paragraph 10, subsections (f) and (g), and paragraph 11 to have such little effect.[7]
 
 
 26
 If there is any ambiguity in the November 8 order, its meaning is clarified by "what preceded it and what it was intended to execute." Union Pacific Railroad Co. v. Mason City & Fort Dodge Railroad Co., 222 U.S. 237, 247, 32 S.Ct. 86, 90, 56 L.Ed. 180 (1911). The correspondence between the parties and the memoranda filed with the court before the issuance of the order demonstrate that the parties were keenly aware that the order requires HUD to fund Little Earth's repair and rehabilitation. On September 22, 1983, Joseph Errigo, an agent of Westminster, wrote to Sarah Canzoneri, HUD's counsel, insisting that adequate funding was a condition to Westminster's assumption of the receivership.[8] HUD responded to the court's request for comments regarding the terms and conditions of the receivership by representing that it was fully authorized to make funds available to pay for repairs necessary to protect the health and safety of Little Earth's tenants.[9] Westminster also responded, stating that it could not assume responsibility over Little Earth without a commitment from HUD and/or the court to provide adequate funding for long-term rehabilitation.[10] Thus, even before the submission of the proposed terms of the receivership, HUD was cognizant that rehabilitation funding was Westminster's key concern.
 
 
 27
 The parties' proposed terms of receivership and the adversarial comments regarding those proposals provide further evidence that the November 8 order requires HUD to fund Little Earth's rehabilitation. The parties agreed to the inclusion of subsection 10(f) and paragraph 11. HUD adamantly opposed the addition of subsection 10(g). HUD conceded subsection 10(g)'s meaning in comments filed with the court:
 
 
 28
 Westminster urges that its authority be expanded beyond the agreed upon language and that it be permitted to begin what amounts to a full-scale rehabilitation of the project. It is HUD's position that the role of a receiver does not include rehabilitation of the project.
 
 
 29
 * * *
 
 
 30
 * * *
 
 
 31
 Furthermore, any major repairs performed at Little Earth during the receivership will have to be paid for with advances from HUD. HUD's authority to advance funds for such repairs is limited to the authority to advance funds for expenses necessary to preserve the project. Thus, Westminster is asking this Court effectively to order HUD to advance funds which the Department is not authorized to advance.
 
 
 32
 Joint App. at 118-19 (citations omitted).
 
 
 33
 The language in the November 8 order, bolstered by the documented understandings of the parties, yields one conclusion: the November 8 order requires HUD to fund Little Earth's repair and rehabilitation as set forth in paragraph 10, subsections (f) and (g).[11] Consequently, the issues of whether HUD was empowered to fund rehabilitation and whether the court was authorized to require such funding were implicitly raised and resolved in the court's November 8 order.
 
 
 34
 We must now determine whether the November 8 order, from which no appeal was taken, is the law of the case. Law of the case is a doctrine of discretion, not a command to the courts. Arizona v. California, 460 U.S. 605, 618, 103 S.Ct. 1382, 1391, 75 L.Ed.2d 318 (1983); see, e.g., In re Exterior Siding & Aluminum Coil, 696 F.2d 613, 616 (8th Cir.1982), vacated, 705 F.2d 980 (8th Cir.) (en banc), cert. denied, 464 U.S. 866, 104 S.Ct. 204, 78 L.Ed.2d 178 (1983). The doctrine provides that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." Arizona v. California, 460 U.S. at 618, 103 S.Ct. at 1397. The doctrine prevents the relitigation of settled issues in a case, thus protecting the settled expectations of parties, ensuring uniformity of decisions, and promoting judicial efficiency. Liddell v. Missouri, 731 F.2d 1294, 1304-05 (8th Cir.), cert. denied, 469 U.S. 816, 105 S.Ct. 82, 83 L.Ed.2d 30 (1984); In re Exterior Siding & Aluminum Coil, 696 F.2d at 616-17. Accordingly, we will reconsider a previously decided issue only if substantially different evidence is subsequently introduced or the decision is clearly erroneous and works manifest injustice. United States v. Unger, 700 F.2d 445, 450 n. 10 (8th Cir.), cert. denied, 464 U.S. 934, 104 S.Ct. 339, 78 L.Ed.2d 308 (1983).
 
 
 35
 The rationale for employing the law of the case doctrine applies here. Westminster has completed a major part of Little Earth's rehabilitation, relying on the finality of the district court's November 8 order. Almost two years elapsed between the issuance of that order and this appeal. During that time, HUD paid over $3 million in Little Earth rehabilitation costs. After receiving displeasing clarifications of the November 8 order, HUD stopped funding Little Earth's rehabilitation and now asks this court to belatedly consider the propriety of issues resolved in the November 8 order. To reconsider these issues would violate the fundamental purposes of the law of the case doctrine. See, e.g., Liddell v. Missouri, 731 F.2d at 1305; United States v. Unger, 700 F.2d at 450; Richardson v. Communications Workers of America, 486 F.2d 801, 804 (8th Cir.1973).
 
 
 36
 HUD argues that although this appeal raises issues previously decided in November 1983, the law of the case doctrine is inapplicable because of changed circumstances, which include the vastly increased estimates of rehabilitation costs, the evolving scope of the rehabilitation, and the conflict surrounding the settlement negotiations during summer 1985. These changed circumstances, HUD urges, mandate reconsideration of issues decided in November 1983 because only after the onset of these events did HUD become aggrieved. HUD contends that prior to these events all funds were being advanced at HUD's discretion under section 207(k) of the National Housing Act, 12 U.S.C. Sec. 1713(k) (1982).
 
 
 37
 We have recognized that "changed circumstances" may provide a basis for departing from the law of the case. In re Exterior Siding & Aluminum Coil, 696 F.2d at 617 (citing In re Upjohn Co. Antibiotic Cleocin Products Liability Litigation, 664 F.2d 114 (6th Cir.1981)). HUD's contention is perhaps best evaluated by applying Judge Arnold's statement in In re Design Classics, Inc., 788 F.2d 1384 (8th Cir.1986):
 
 
 38
 When an error of law is alleged, the proper vehicle for attack on that error is the direct appeal, filed either at once or after denial of a timely motion under Rule 59. Upon expiration of the time allowed for appeal, the judgment or order becomes the law of the case as to the parties. Such a judgment will be set aside only upon a showing that it was void from the beginning or that other extraordinary circumstances exist, for example, some good reason that precluded the moving party from advancing his contentions at an earlier, timely stage of the case.
 
 
 39
 Id. at 1386.
 
 
 40
 The alleged changed circumstances here are not so extraordinary so as to have prevented HUD from advancing its legal contentions through a timely appeal. While the monetary effect of the November 8 order may not have been felt by HUD until the onset of the so-called changed circumstances, the legal meaning of the order and its ramifications were evident the day the order was issued. Thus, we cannot conclude that the changed circumstances advanced by HUD prevent us from holding that the district court's November 8, 1983 order is the law of the case.
 
 II.
 
 41
 Notwithstanding our view that the substantive issues raised in this appeal were decided in the district court's November 8 order and now stand as the law of the case, we are satisfied that the district court's order could also be affirmed on both of the following grounds: (1) the district court's equitable power enabled it to order HUD to fund Little Earth's rehabilitation, and this order does not require HUD to act beyond its statutory authority under section 207(k) of the National Housing Act; and (2) the district court's finding that completion of the disputed rehabilitation is necessary to protect the health and safety of Little Earth's residents and preserve Little Earth's habitability is not clearly erroneous.
 
 
 42
 HUD argues that despite its request for appointment of a receiver, the court was powerless to require HUD to fund Little Earth's rehabilitation. HUD relies primarily on Atlantic Trust Co. v. Chapman, 208 U.S. 360, 28 S.Ct. 406, 52 L.Ed. 528 (1908), and Bowersock Mills & Power Co. v. Joyce, 101 F.2d 1000 (8th Cir.1939). These cases both recognize that when a receiver makes an after-the-fact demand that the party requesting the receiver pay the receiver's costs, the sole fact that the party requested appointment of the receiver does not render the party responsible for the receiver's costs. This principle, however, does not limit a court's authority to direct who will pay the costs and expenses of the receivership. To the contrary, both Atlantic Trust Co. and Bowersock Mills indicate that the appointing court has not only the authority but also wide discretion to determine who shall bear the costs of the receivership. Atlantic Trust Co. v. Chapman, 208 U.S. at 370-75, 28 S.Ct. at 409-11; Bowersock Mills & Power Co. v. Joyce, 101 F.2d at 1002-03. See generally 2 R. Clark, A Treatise on the Law & Practice of Receivers Sec. 637.1(c) (3d ed. 1959) (if receivership property may not yield adequate funds, the court may justifiably require requesting party to pay costs and expenses of receivership). HUD recognized the serious physical deterioration of Little Earth. Upon its own volition and for its own benefit, HUD asked the district court to appoint Westminster as receiver. After submitting itself to the court's equitable authority, HUD cannot successfully contend that the district court was powerless to direct the terms of the receivership.
 
 
 43
 Similarly, we cannot accept HUD's contention that the district court directed HUD to commit funds beyond HUD's statutory authority under section 207(k) of the National Housing Act, 12 U.S.C. Sec. 1713(k) (1982). HUD argues that the National Housing Act does not obligate HUD to fund rehabilitation of Little Earth, and furthermore, HUD's decision not to fund rehabilitation of Little Earth is a rational exercise of its discretion, judicially unreviewable under section 701(a)(2) of the Administrative Procedure Act, 5 U.S.C. Sec. 701(a)(2) (1982).
 
 
 44
 Section 207(k) of the National Housing Act governs the present situation, where HUD is acting as a mortgagee prior to the conveyance or foreclosure of mortgaged property. Among other things, section 207(k) provides that pending acquisition by conveyance or foreclosure "the Secretary [of HUD] is authorized * * * to exercise all the rights of a mortgagee under such mortgage, including the right to sell such mortgage, and to take such action and advance such sums as may be necessary to preserve or protect the lien of such mortgage." 12 U.S.C. Sec. 1713(k) (emphasis added). We agree with HUD that section 207(k) is not a mandate; it authorizes but does not require HUD to take actions necessary to protect its mortgage interests. While HUD must perform its duties and exercise its powers consistent with the national housing policy, 42 U.S.C. Sec. 1441 (1982), section 207(k) gives HUD broad discretion to determine the methods by which it will protect its mortgage interests. United States v. Victory Highway Village, Inc., 662 F.2d 488, 495 (8th Cir.1981); United States v. Occi Co., 758 F.2d 1160 (7th Cir.1985); United States v. Winthrop Towers, 628 F.2d 1028 (7th Cir.1980). This authority would certainly encompass a decision by HUD to request court appointment of a receiver to protect its mortgage interest, or a decision to advance funds for repair and rehabilitation, with the intent to enhance the value of mortgaged property in excess of amounts expended. See, e.g., United States v. American National Bank & Trust Co., 573 F.Supp. 1317 (N.D.Ill.1983) (appointment of receiver). If HUD voluntarily funded the rehabilitation mandated by the district court's November 8 order, such funding would fall within the scope of HUD's section 207(k) discretionary authority. The national housing policy of eliminating "substandard and other inadequate housing" would be furthered. 42 U.S.C. Sec. 1441. The distinction here, HUD argues, is that HUD did not volunteer to fund the rehabilitation; rather, the court ordered it. We think this distinction makes no difference. HUD's statutory authority is not restricted simply because its actions are court ordered rather than of its own volition. We thus conclude that the district court's November 8 order directs HUD to engage in activity within its statutory authority under section 207(k).
 
 
 45
 Still, HUD contends that because section 207(k) authorizes but does not mandate HUD funding, HUD's decision not to fund Little Earth's rehabilitation is an act committed to HUD's discretion, judicially unreviewable under section 701(a)(2) of Administrative Procedure Act, 5 U.S.C. Sec. 701(a)(2). We need not reach the merits of this argument. Its fatal flaw is HUD's failure to recognize that HUD voluntarily relinquished its ability to discretionarily act with respect to the funding of Little Earth's rehabilitation. Specifically, HUD requested the court appointment of Westminster as Little Earth's receiver. This was a discretionary act, which is not being attacked. In seeking the appointment of a receiver, however, HUD voluntarily relinquished its discretionary authority and subjected itself to the district court's equitable powers. This led to the issuance of the court's November 8 order, which requires HUD to fund Little Earth's rehabilitation. HUD does not have the discretionary authority to disobey a valid and binding court order.
 
 
 46
 Finally, we consider the district court's factual finding that the disputed rehabilitation is necessary to protect the health and safety of Little Earth's residents and preserve the habitability of Little Earth. Subsection 10(f) of the court's November 8 order encompasses such repairs. HUD has agreed to fund all repairs within the scope of subsection 10(f). Thus, unless the district court's factual finding is clearly erroneous, this finding becomes an additional reason for affirmance. Fed.R.Civ.P. 52(a).
 
 
 47
 The application of the clearly erroneous standard of review requires that we affirm the district court's factual findings unless we are "left with the definite and firm conviction that a mistake has been committed." Anderson v. City of Bessemer City, 470 U.S. 564, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948)). The district court's factual findings may rest solely on "physical or documentary evidence or inferences from other facts." Id. 105 S.Ct. at 1512. The district court judge has closely scrutinized Little Earth's status since the inception of the receivership in 1983. The judge has presided over repeated hearings concerning Little Earth. On July 22, 1985, he personally inspected Little Earth's premises. The court's order of October 3, 1985 is a culmination of the court's involvement with Little Earth. This order provides finely detailed findings of fact, which we need not belabor, concerning virtually every facet of Little Earth's deteriorated state. From all this, the court found that completion of the disputed rehabilitation is necessary to preserve the habitability of Little Earth and protect the health and safety of its tenants. This finding is not clearly erroneous, and thus provides an alternative basis for affirming the district court order requiring HUD to fund the remaining scheduled rehabilitation.
 
 
 48
 The judgment of the district court is affirmed.
 
 
 49
 McMILLIAN, Circuit Judge, dissenting.
 
 
 50
 I respectfully dissent. The district court lacked legal or equitable power to order HUD to pay for the full-scale physical rehabilitation of the Little Earth housing project. HUD is merely a mortgagee seeking foreclosure and its financial responsibility for the project is accordingly limited. HUD cannot be required to fund work beyond (1) what it has voluntarily agreed to pay for work already completed, (2) what is reasonably necessary to preserve the property for resale, e.g., emergency repairs, and (3) what is needed to protect the health and safety of tenants. HUD acknowledges that it is obliged to pay for work within these parameters. This court should not, either by directly affirming the district court orders of August 5, August 14, September 5, September 12, and October 3, 1985, or by applying the doctrine of the law of the case, require more.
 
 
 51
 HUD has the statutory authority under Sec. 207(k) of the National Housing Act, 12 U.S.C. Sec. 1713(k), to fund nonessential rehabilitation work, but this is a decision within the agency's discretion. The statute creates no enforceable right to compel HUD to fund such work. Thus, the proper standard of judicial review of HUD's decision not to undertake the full-scale physical rehabilitation of the Little Earth housing project is the "arbitrary and capricious" standard of 5 U.S.C. Sec. 702. Under this standard, HUD's determination that the full-scale physical rehabilitation would not be cost-effective or promote national housing policy because the investment could not be recouped at resale is rational. See United States v. Victory Highway Village, 662 F.2d 488 (8th Cir.1981) (HUD has broad discretion in determining how to pursue goals of National Housing Act).
 
 
 52
 The majority contends that by agreeing to the appointment of a receiver, HUD relinquished this discretionary authority and subjected itself to the district court's equitable powers. Slip op. at 19. Even if this is true, the district court plainly abused its discretion in defining the responsibilities of the receiver and in allocating the expenses of the receivership.
 
 
 53
 HUD requested appointment of a receiver for the Little Earth housing project to assure that the property would not continue to deteriorate and that basic services such as utilities would be continued after the agency's planned foreclosure was enjoined pending resolution of underlying civil rights claims. Contrary to the majority's conclusion, however, a court exceeds its equitable authority by ordering a mortgagee to pay receivership expenses in excess of the property's value merely because the mortgagee requests appointment of a receiver where no special circumstances are present that make such an imposition of costs equitable. Atlantic Trust Co. v. Chapman, 208 U.S. 360, 375-76, 28 S.Ct. 406, 411, 52 L.Ed. 528 (1908). Where the mortgagee is a government agency, it is even more imperative that the court exercise its equitable authority over a receiver within the bounds of financial reasonableness. The public trust is injured by requiring HUD to pour into only one of its many projects massive amounts of the already scarce resources allocated to implement housing policy nationwide.
 
 
 54
 The district court justified the scope of the rehabilitation it had ordered as necessary to protect the health and safety of Little Earth residents and to preserve the property. Little Earth of United Tribes, Inc. v. HUD, No. 3-82-1096, slip op. at 8, 17, 20 (D.Minn. Oct. 3, 1985) (October 3 order). But HUD has already voluntarily agreed to fund repairs within these parameters, which are defined by paragraph 10(f) of the receivership order. The district court's factual findings thus do not justify an order for further and nonessential rehabilitation, which the district court believes would ensure the long term "viability" of the project and would protect rehabilitation work already completed. October 3 order at 17, 20. Because the remedy ordered by the district court exceeds the scope that can be justified by its factual findings, I would conclude the district court abused its sound judicial discretion in ordering HUD to fund rehabilitation beyond that specified in paragraph 10(f).
 
 
 55
 The majority, however, avoids basing its decision on the merits of the district court's orders by invoking the doctrine of law of the case. Supra at 1441. Because HUD failed to directly appeal the November 8 order, the majority holds that the agency's present challenge is an untimely collateral attack. Supra at 1437-38. The majority interprets the 1985 orders challenged in this appeal to be mere clarifications of the November 8 order because the earlier order "implicitly raised and resolved" the issue HUD now appeals as to whether the district court could order funding of rehabilitation of this scope. Supra at 1440. The majority acknowledges that the law of the case doctrine is a discretionary principle, invoked by a court to protect the settled expectations of parties or to promote judicial efficiency. Supra at 1440 (citations omitted). The court concludes that because Westminster has already undertaken extensive rehabilitation of Little Earth under the November 8 order, it would be unjust to not consider that order final. Id.
 
 
 56
 This rationale is flawed. Westminster cannot reasonably claim to have relied on the earlier order. Since September 1985, the receiver has been stayed by order of this court from contracting for future rehabilitation work and, in fact, has not contracted for such work. HUD has agreed to pay for all rehabilitation work completed to date. Thus, there can be no claim that the receiver justifiably relied on the November 8 order such that reopening the issues implicitly settled in that order would do an injustice.
 
 
 57
 Even if the doctrine of law of the case were properly invoked in this case, the majority fails to apply the "changed circumstances" exception to that doctrine's finality. The majority holds that HUD failed to show "extraordinary" changed circumstances that would justify its failure to timely appeal the November 8 order. Supra% 1441. "While the monetary effect of the November 8 order may not have been felt by HUD until the onset of the so-called changed circumstances," writes the majority, "the legal meaning of the order and its ramifications were evident the day the order was issued." Supra at 1441.
 
 
 58
 This statement misrepresents the course of events since entry of the November 8 order. That order authorized the receiver to "begin rehabilitation," which the receiver estimated at that time would cost between $1.5 and $2.8 million. At the time of this appeal, the scope of the rehabilitation contemplated had evolved into a plan for full-scale physical rehabilitation of the housing project and the most recent estimates put the cost of such full-scale rehabilitation at approximately $7 million. The district court itself has acknowledged that the price has increased due to expansion in the scope of the work the receiver believes is necessary. October 3 order at 15. Thus, it is apparent that at the time the November 8 order was entered, neither HUD nor the district court appreciated the scope and cost of rehabilitation work that would eventually be undertaken or scheduled. In my view, this expansion of both the scope and cost of contemplated work constitutes a change in circumstances that makes it inappropriate and unjust not to reconsider on the merits what work HUD must fund at Little Earth.
 
 
 59
 I share the evident concern of the district court and of the majority for the well-being of Little Earth tenants. I am aware, too, of the community purposes the Little Earth project serves by providing affordable housing to Native Americans in a culturally supportive environment. These worthy purposes, however, cannot be realized by unwarranted exercise of the broad power a court may exercise in the name of equity.
 
 
 60
 For the reasons set out above, I would reverse in part the August 5, August 14, September 5, September 12, and October 3, 1985, orders of the district court and remand the case, directing entry of a modified receivership order consistent with the views set out in this dissent.
 
 
 
 [1]
 The Honorable Robert G. Renner, United States District Judge for the District of Minnesota
 
 
 [2]
 Section 236 of the National Housing Act, 12 U.S.C. Sec. 1715z-1 (1982), authorizes HUD to insure and subsidize interest payments on loans made for the purpose of building low- and moderate-income housing projects. The projects are privately owned, and the mortgages are held by private entities. HUD serves as the insurer of the mortgages. Normally, repairs to the projects are funded through rental income, private or local government sources, or occasionally, other HUD programs designed to fund housing rehabilitation
 
 
 [3]
 Paragraph 10, subsections (f) and (g), provides:
 
 
 [10]
 Unless otherwise directed by this court, upon assumption of full management responsibility at the Little Earth Housing Project, Westminster is hereby specifically authorized and empowered:
 (f) To make repairs to the Little Earth Housing Project to protect the health and safety of the tenants, preserve the project, prevent deterioration and to bring all dwelling units into a condition of habitability. Habitability shall include, but not be limited to, the following:
 (i) watertight units (i.e., ceilings, walls and windows do not leak);
 (ii) a continuing supply of hot and cold water;
 (iii) adequate sanitary facilities and a safe method of sewage disposal;
 (iv) heating facilities adequate for healthful and comfortable living conditions, taking into account the climatic conditions of the area;
 (v) electric supply for lighting and usual equipment use, with no exposed electrical wiring;
 (vi) adequate cooking facilities;
 (vii) to the extent possible, absence of any lead based paint hazard; and
 (viii) equipment necessary to provide tenants with reasonable security on the grounds and in the buildings (e.g., outdoor lighting, lockable building entryways).
 (g) To contract for physical rehabilitation of the project which Westminster deems necessary to begin returning the project to decent, safe and sanitary condition which will meet quality standards generally accepted in the housing industry.
 
 
 [4]
 Paragraph 11 provides:
 
 
 [11]
 When Westminster determines that it will be necessary for HUD to advance funds under this order, Westminster shall submit a written request to HUD with appropriate documentation, and provide copies of the request to the court and the plaintiffs. HUD shall promptly review the request and take action appropriate under this order. The requirement of a prior written request may be waived by mutual agreement of HUD and Westminster; and Westminster shall submit appropriate documentation at the earliest possible date
 
 
 [5]
 Paragraph 6 states:
 
 
 [6]
 Until Westminster assumes full management responsibility of the Little Earth Housing Project as provided hereafter, HUD is directed to advance funds for repairs necessary to protect the health and safety of the tenants and to take all appropriate steps, including the advancement of funds, required to maintain utility services to the Little Earth Housing Project. When Westminster determines that an advance of such funds is necessary, Westminster shall submit to HUD a request as provided in paragraph 11
 
 
 [6]
 Section 207(k) of the National Housing Act, 12 U.S.C. Sec. 1713(k) (1982), as it concerns the Secretary of HUD's authority to advance funds pending conveyance or foreclosure, states:
 [T]he Secretary is authorized * * * to exercise all the rights of a mortgagee under such mortgage, including the right to sell such mortgage, and to take such action and advance such sums as may be necessary to preserve or protect the lien of such mortgage.
 
 
 [7]
 The district court undoubtedly did not intend such an insignificant effect. In its order of October 3, 1985, the court stated:
 On November 8, 1983, this court issued its order setting forth the terms of Westminster's appointment as receiver. A copy of that order is attached hereto at Appendix A. Paragraphs 10(f) and 10(g) specified the scope of the rehabilitation, and paragraph 11 stated that HUD should promptly act on all written requests submitted by Westminster under the order. This language clearly required HUD to pay promptly for all work done pursuant to paragraphs 10(f) and 10(g).
 * * *
 The court's November 8, 1983 Order, was intended to, and did resolve the question of Westminster's authority to undertake rehabilitation. The November 1983 Order was a final order from which HUD could have appealed had it objected to the court's ruling, or had it wanted to assert its lack of authority to advance funds to pay for rehabilitation.
 * * *
 In adopting the November 8, 1983 Order, the court found that immediate rehabilitation was needed to preserve the project and that HUD was authorized to fund such rehabilitation under section 207(k) of the National Housing Act, 12 U.S.C. Sec. 1713(k). The court further found that it had authority to order the rehabilitation pursuant to its equitable powers to define the responsibilities of the receiver, to allocate the expenses of the receivership, and to preserve the property ancillary to the issuance of a preliminary injunction. Consequently, the court considered and rejected HUD's argument that it did not have authority to fund such rehabilitation. Paragraph 11 of the November 8, 1983 Order was intended to, and did, direct HUD to pay for the rehabilitation upon invoice by Westminster.
 Little Earth of United Tribes, Inc. v. HUD, No. 3-82-1096, slip op. at 4-6 (D.Minn. Oct. 3, 1985).
 
 
 [8]
 Mr. Errigo stated:
 The Community Development Corporation must be assured of the availability of funds to meet all necessary operating and maintenance expenses, including any extraordinary or emergency outlays required due to the distressed state of the property. Further, we must be assured that HUD will approve a budget for the physical rehabilitation of the property, and provide rehabilitation funding in an amount acceptable to the receiver.
 The Community Development Corporation/Westminster Corporation can not assume responsibility for any aspect of Little Earth operations without a commitment from HUD and/or the Court that adequate operating and rehabilitation funding will be available.
 Joint Supp.App. at 323-24 (emphasis added).
 
 
 [9]
 As to the availability of Funds for Repairs, HUD stated:
 Under the terms of the mortgage, Def. Doc. No. 2, p 11, and the National Housing Act at 12 U.S.C. Sec. 1715(k) [sic], HUD is authorized to advance funds for expenses necessary to preserve the Little Earth project. Thus, monies are available from the FHA insurance fund to pay for repairs necessary to protect the health and safety of the tenants and to preserve the Government's security.
 Joint Supp.App. at 329-30.
 
 
 [10]
 In its report regarding the terms and conditions of the receivership, Westminster stated:
 In order to perform its responsibilities as receiver in a manner which will insure that the property effectively serves Indian people, Westminster must be assured of the availability of funds to meet all necessary operating and maintenance expenses, including any extraordinary or emergency outlays required due to the distressed status of the property. Further, Westminster must be assured that HUD will approve a budget for the physical rehabilitation of the property and will provide rehabilitation funding in an amount acceptable to Westminster.
 Westminster has reviewed HUD's current policy statement regarding repairs of projects acquired by HUD and believes, based upon representations of local HUD officials, that under HUD's current policy, funding meeting Westminster's requirements could be authorized. Westminster views this item as crucial and is concerned that its management program will be ineffective if HUD regulations are interpreted narrowly. In particular, Westminster must be assured that: (1) all dwelling units in Little Earth will be maintained in habitable condition during the term of the receivership; (2) repairs to unit interiors and interior common areas will be of a permanent nature; (3) general rehabilitation of the property completed during the term of the receivership (including mechanical systems, exterior of the buildings and grounds) will return the property to decent, safe, and sanitary condition and will meet quality standards generally accepted in the housing industry; (4) the rehabilitation process will be carried out at a reasonable pace which clearly demonstrates steady progress toward the goal of quality housing; and (5) Westminster Corporation will be authorized to employ the services of outside experts at project expense as deemed necessary by Westminster.
 Westminster cannot assume responsibility for any aspect of Little Earth operations without a commitment from HUD and/or the Court that adequate operating and rehabilitation funding will be available to begin the long-term rehabilitation necessary to instill Little Earth residents with pride.
 Joint Supp.App. at 333-34 (emphasis added).
 
 
 [11]
 At oral argument, HUD urged that paragraph 6 of the November 8 order dictates that paragraph 11 is inapplicable to paragraph 10, subsections (f) and (g). HUD bases its argument on the fact that paragraph 6, which governed repairs prior to Westminster's assumption of full responsibility over Little Earth, specifically refers to paragraph 11 as a method of submitting fund requests, while paragraph 10, subsections (f) and (g), contains no reference to paragraph 11. We find HUD's argument unpersuasive. Paragraph 11 contains no language that limits the application of paragraph 11 solely to paragraph 6. HUD's construction of the order is based solely on a parsing of an isolated phrase in paragraph 6 and renders inconsequential the effect of both paragraph 11 and subsections 10(f) and 10(g). Moreover, HUD's interpretation runs completely contrary to the expressed intention of the district court and the documented understandings of the parties