WILLIAMS, Senior Circuit Judge,
concurring in the judgment:
I write separately to explain why appellees’ purported “law of the case” argument must be rejected and to offer a somewhat different interpretation of the statute from that of Chief Judge Sentelle.

Law of the Case; Waiver and Forfeiture

Under the doctrine of “law of the case,” a court may decline to reconsider the merits of its own prior rulings when the same point of law arises for the second time in the same case. The panel rightly notes that law of the case was not the basis of the district court’s decision. Maj. Op. at 1091; see also 2010 Fee Award Decision, 677 F.Supp.2d at 180.
More importantly, application of “law of the case” by a lower court, no matter how correct, cannot, as a logical matter, preclude review on the merits by a higher court. In Christianson v. Colt Industries *1098 Operating Corp., 486 U.S. 800, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988), the Court initially determined that the Federal Circuit lacked jurisdiction for the decision under review (compelling vacatur). It then examined and emphatically rejected the respondent’s claim that it was entitled to preserve its victory in the Federal Circuit on a law of the case theory. The Court explained that respondent was wrong on a number of grounds, including the inconvenient fact that the first of multiple decisions on jurisdiction had rejected Federal Circuit jurisdiction. But the Court went on to give the clincher:
Most importantly, law of the case cannot bind this Court in reviewing decisions below. A petition for writ of certiorari can expose the entire case to review. Panama R. Co. v. Napier Shipping Co., 166 U.S. 280, 283-284, 17 S.Ct. 572, 41 L.Ed. 1004 (1897). Just as a district court’s adherence to law of the case cannot insulate an issue from appellate review, a court of appeals’ adherence to the law of the case cannot insulate an issue from this Court’s review. See Messenger [v. Anderson, 225 U.S. 436], at 444, [32 S.Ct. 739, 56 L.Ed. 1152 (1912)]; Hamilton-Brown Shoe Co. v. Wolf Brothers & Co., 240 U.S. 251, 257-259 (1916).
486 U.S. at 817-18, 108 S.Ct. 2166.
To see why the appellate court cannot treat an issue as resolved simply because the district court has correctly applied law of the case, consider the following two scenarios. In both the district court addresses the same issue twice, and in both there had been neither an intervening trip to the court of appeals nor a final appeal-able judgment that would allow a party access to the court of appeals.
In the first scenario, the district court looks at the issue and decides; then, when it comes up again, the court carefully reconsiders the matter, adds new reasoning, introduces new subtleties, and comes out the same way. The court of appeals might find the new reasoning persuasive, or it might not. In any event, it would not skip the issue simply because the district court considered it twice.
In the second scenario, the district court resolves the question once, and then, on the issue’s recurrence, invokes law of the case. Determining, correctly, that none of the reasons not to apply law of the case is present, it sticks with its first resolution. It would surely be nonsense to say, in this scenario, that the court of appeals cannot, or should not, face the issue (assuming it’s otherwise properly presented, necessary to the outcome, etc.).
Appellees here rely on a number of decisions in which we have spoken of “law of the case” as the reason to affirm a district court decision that had applied that doctrine. Kimberlin v. Quinlan, 199 F.3d 496 (D.C.Cir.1999); Williamsburg Wax Museum, Inc. v. Historic Figures, Inc., 810 F.2d 243 (D.C.Cir.1987) (using terms waiver and law of the case); see also Laffey v. Northwest Airlines, Inc., 740 F.2d 1071, 1089-90 (1984) (similarly using terms waiver and law of the case); United States v. Alaw, 327 F.3d 1217, 1219 (D.C.Cir.2003) (using term law of the case). But in fact, as we have recognized, these cases all involved situations where a party had participated in a prior appeal that afforded an opportunity to obtain appellate reversal. See Crocker v. Piedmont Aviation, Inc., 49 F.3d 735, 738-41 (D.C.Cir.1995). (Kimberlin and Alaw, though following Crocker, are no different in this.) In such cases the appellate court is not abdicating substantive review on the ground that the district court properly decided not to replow what was for it old ground, but rather is justifiably treating a party as having abandoned an opportunity for appellate review. As we observed in Crocker, the correct name *1099 for such a doctrine is waiver. Crocker, 49 F.3d at 739; see also 18B Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure § 4478.6 (4th ed.2008); U.S. v. Henry, 472 F.3d 910, 913 (D.C.Cir.2007) (applying the concept under the waiver label); Northwestern Indiana Telephone Co., Inc. v. FCC, 872 F.2d 465, 470 (D.C.Cir.1989) (same, but also applying “law of the case” to another issue, previously decided by our court, i.e., in the standard domain of law of the case).
But the term waiver is sensibly confined to the situation where there actually has been a prior appeal, as opposed to the present case, where an issue was decided in an earlier ruling that was final and appealable at the time but which the losing party never appealed on any grounds. Wright, Miller and Cooper classify such a case, that of a mere prior opportunity for an appeal, as one of “forfeiture.” Id.[1]
Three other circuits have each, on at least one occasion, invoked the forfeiture principle to justify refusal to consider the merits of issues on appeal. See Little Earth of United Tribes, Inc. v. Dept. of Housing and Urban Development, 807 F.2d 1433, 1438 (8th Cir.1986); ABC, Inc. v. Nameloc, Inc., 403 F.3d 607, 610-11 (8th Cir.2005); Griffin v. Michigan Dept. of Corrections, 5 F.3d 186, 190 (6th Cir.1993); Martinez v. Roscoe, 100 F.3d 121, 123 (10th Cir.1996). No case from our court has applied — or, indeed, rejected — a claim of forfeiture based on failure to exercise a right to appeal a final order. Even in the waiver context, where the case for barring an unasserted claim is stronger because the case itself has already occasioned appellate court consideration, we have noted that the doctrine is “even one notch weaker” than law of the case. Crocker, 49 F.3d at 740. In this instance, I see no reason to treat the fee cap argument as forfeit. The 2008 Fee Award Decision was arguably a final and appealable judgment. See Gates v. Rowland, 39 F.3d 1439, 1450 (9th Cir.1994). But if this is so, it was less than plainly obvious under the law of this circuit, and appellees, whose award under the 2008 Fee Award Decision is not at issue in this appeal, were not significantly disadvantaged by appellants’ failure to appeal the fee cap issue until 2010. (The bulk of the fees at issue here were incurred before the 2008 ruling and thus, obviously, well before the District had any opportunity to appeal that decision.)

Statutory Analysis

Although I concur in Chief Judge Sentelle’s ultimate judgment that the fee cap statute permits awards of attorneys’ fees up to $4,000 per student in the class, I do not agree that the fee cap statute is “plain and unambiguous” with respect to class actions. The fee cap states that
Sec. 122. (a) None of the funds contained in this Act may be made available to pay—
(1) the fees of an attorney who represents a party in an action or an attorney who defends an action brought against the District of Columbia Public Schools under the Individuals with Disabilities Education Act (20 U.S.C. 1400 et seq.) in excess of $4,000 for that action; or
*1100 (2) the fees of an attorney or firm whom the Chief Financial Officer of the District of Columbia determines to have a pecuniary interest, either through an attorney, officer, or employee of the firm, in any special education diagnostic service, schools, or other special education service providers.
(b) In this section, the term “action” includes an administrative proceeding and any ensuing or related proceedings before a court of competent jurisdiction.
2006 District of Columbia Appropriations Act § 122; Pub.L. No. 109-115, 119 Stat. 2396, 2519 (2005), cont’d in effect, Revised Continuing Appropriations Resolution, § 101(a)(9), Pub.L. No. 110-5, 121 Stat. 8, 9 (2007).
A literal reading of the statute would award $4,000 to every individual attorney who represents a party. As Chief Judge Sentelle’s opinion points out, this would lead to an absurd result. A per party cap also cannot be understood literally, as it would seem to imply a ceiling of $8000 when two parents sue on behalf of their child, as each would be “a prevailing party who is the parent of a child with a disability.” See 20 U.S.C. § 1415(i)(3)(B). Instead, one must read “party” to refer to a student, or the student’s parent or parents suing on behalf of the student, or both (but never adding up to more than one party per student whose education is at issue).
What is less clear is whether the $4,000 fee cap should be read to apply per student or per action. The phrase “fees of an attorney who represents a party in an action” seems to imply a $4,000 per student reading because it suggests that the relevant unit of analysis is a party in an action. 2006 District of Columbia Appropriations Act § 122(a)(1). But the language at the end of the same clause — “in excess of $4,000 for that action” — cuts in favor of the per action interpretation as it implies that the $4,000 limit applies to actions as a whole. Id. Under the per student reading, the fee cap applies to “an attorney who represents a party in an action” and the phrase “$4,000 for that action” merely clarifies the scope of representation of a party that the fee cap applies to. Id. In other words, an attorney may receive $4,000 for each separate action in which they represent a party or $4,000 for each separate party they represent in a single action. Under the per action reading, the fee cap limits fees paid to an attorney (or attorneys) “for that action” and the phrase “an attorney who represents a party in an action” merely specifies the type of attorney (i.e., an attorney who either brings or defends an IDEA suit) whose fees are subject to the cap. Id. On that reading, an attorney may not receive more than $4,000 for a single action regardless of the number of parties represented in that action.
Both readings of the statute are plausible. The statutory language provides clear guidance in cases where each action concerns one student. But I see no “evident intent” of Congress with respect to class actions. If Congress had thought about class actions even in the slightest, it would have provided more explicit instruction on how to deal with them. All that is clear is that Congress intended that the fee cap be no more than $4,000 per student and no less than $4,000 per action. But this leaves two plausible interpretations that entail wildly different results in the class action context.
Just as the explicit text is ambiguous, it is difficult to identify a policy implicit in the statute that offers clear guidance for our case. The fee cap statute balances Congressional concern with the diversion of funds from District schools to plaintiffs’ attorneys with the desire to provide some source of funding for legal representation *1101 of poor children with worthy claims. For cases involving individual students, Congress evidently decided that a $4,000 fee cap would represent a reasonable balance of these considerations. Class actions offer the possibility of economies of scale in litigation by resolving the claims of many similarly situated parties in one action rather than forcing each individual claim to be brought as a separate action. The time of plaintiffs’ attorneys is one of the many resources on which a class action may economize. The cost of legal representation per student in a class action could be expected to be lower, perhaps much lower, than those in individual actions. So it is doubtful that someone who believed that a $4,000 per student fee cap struck a reasonable balance between protecting the District’s fisc and securing legal representation for poor children would also believe that the same $4,000 per student was the best fee cap in class actions. And there is surely some anomaly in construing a cap that to a degree serves to constrain overlawyering as having no such beneficent effect in a class action. But it seems even less likely that the drafters could have thought that a $4,000 per action fee cap for a case involving thousands of students would provide for adequate legal representation. Instead, the policy logic of the statute suggests that the fee cap for large class actions should be something less than $4,000 per student but more than $4,000 per action. Unfortunately, this is not one of the two plausible interpretations of the statutory language. The text of the statute forces us to choose between two extreme outcomes.
On balance, I believe that the $4,000 per student interpretation is a somewhat superior reading. As Chief Judge Sentelle’s opinion observes, the $4,000 per action rule would provide a perverse incentive to break class actions into multiple individual actions so as to receive higher attorneys fees. Furthermore, while Congress evidently decided that $4,000 was ample compensation for an attorney representing an individual student, it is difficult to see how the same compensation could be reasonable for a much larger, longer and more complex class action. Whereas a $4,000 cap on fees in a suit brought by an individual student seems unlikely to force impecunious parents to rely on pro bono legal services, a $4,000 fee cap on a class action would likely have just this effect. By contrast, since Congress was willing to permit the District to spend the aggregate of $4,000 per student on fees in individual cases, it plainly had no clear opposition to the aggregate cost that a per student rule imposes on the District in this case. Finally, the fee shifting statute itself provides that fees may be awarded “to a prevailing party who is the parent of a child with a disability.” 20 U.S.C. § 1415(i)(3)(B). Given that fee awards are made to parents of a student, it seems fitting to read the cap on these fees as applying per student rather than per action.

. Although appellees in their brief framed their argument as one of “law of the case,” they acknowledged in oral argument that there was some ambiguity regarding which label to use in this instance. See Transcript of Oral Arg. at 19. And they cited cases from the Eighth Circuit that clearly invoke the principle of forfeiture, although failing to distinguish it from waiver and law of the case. See Transcript of Oral Arg. at 19, 20 (mentioning Little Earth of United Tribes, Inc. v. Dept. of Housing and Urban Development, 807 F.2d 1433 (8th Cir.1986); ABC, Inc. v. Nameloc, Inc., 403 F.3d 607 (8th Cir.2005)).