**IN RE: Terry Alan YARBROUGH and Trace Poole Yarbrough, Debtors.**

**Jane Powell, Individually, and as Trustee, and Irvin Robinson, Receiver for Bee Jay's Hairstyling Academy, Inc., Movants**

**v.**

**Terry and Trace Yarbrough, Debtors, and James F. Dowden, Chapter 7 Trustee, Respondents**

**Case No. 4:12–bk–17234J**

United States Bankruptcy Court, E.D. Arkansas, **Little Rock Division.**

Signed 10/02/2015

James Howard Smith, Attorney at Law, Little Rock, AR, for Debtor.

## ORDER

Phyllis M. Jones, United States Bankruptcy Judge

Before the Court is the Renewed Motion to Lift Stay, to Abandon Property, and for Scheduling Order filed on April 13, 2015, by Jane Powell individually and as trustee,[1] and by Irvin Robinson, as Receiver for Bee Jay's Hairstyling Academy, Inc. (**"Bee Jay's"**) (Doc. No. 209) and the Debtors' Response and Objection to Renewed Motion to Lift Stay, to Abandon Property, and for a Scheduling Order filed by Terry Alan Yarbrough and Trace Poole Yarbrough (the **"Debtors"**) on April 23, 2015 (Doc. No. 212). The matter was heard beginning on April 28, 2015, and was continued to and concluded on June 9, 2015. Jane Powell and Irvin Robinson appeared in person and by and through their attorneys Sutter & Gillham, P.L.L.C., by Mr. Luther Sutter. Debtor Terry Yarbrough appeared in person and the Debtors also appeared by and through their attorney, Mr. James Howard Smith. The Chapter 7 Trustee, James F. Dowden, appeared by and through his attorneys, Keech Law Firm, P.A., by Mr. Seth Hyder. At the close of the hearing the Court took the matter under advisement. For the reasons stated below, the motion will be granted, in part, and denied, in part.

---

1. The actual trust Mrs. Powell serves as trustee for is not identified in the record.

## I. JURISDICTION

This Court has jurisdiction over the matter presented pursuant to 28 U.S.C. §§ 1334 and 157. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (G), and (O). The following shall constitute the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 9014.

## II. BACKGROUND

This matter involves a dispute between a brother and sister. The dispute has resulted in litigation before the Circuit Court of Pulaski County, Arkansas; the Arkansas Court of Appeals; and this Court. The current motion before the Court is the third motion for relief from stay [2] filed by Mrs. Powell and Irvin Robinson (together "**Movants**") in this bankruptcy case. As more fully described below, the matter involves a $400,000 judgment entered in favor of Mrs. Powell against Terry Yarbrough by the Pulaski County Circuit Court. The Movants have claimed the $400,000 judgment constitutes a lien on the following: (1) the Debtors' residence located in Roland, Arkansas (the "**Residence**"), (2) a five acre tract of land titled in the name of Terry Yarbrough [3] (the "**Five Acre Tract**"), and (3) over twenty acres of real property involved in transactions between Terry Yarbrough and his deceased father (the "**Twenty Acres**"). In addition to the $400,000 judgment lien, the Movants assert that Bee Jay's holds a note secured by a mortgage on the Debtors' Residence. The Movants seek relief from stay to pursue foreclosure of the note and mortgage in order to wind up the business affairs of Bee Jay's, and they seek abandonment of the Five Acre Tract from the estate, among other things.

### A. Prepetition Events

The following is a summary of the events leading up to the Debtors' bankruptcy filing as described in a recent opinion by the Arkansas Court of Appeals: [4]

Terry [Yarbrough] and Jane [Powell] are the children of the late Betty Yarbrough. Before Betty [Yarbrough] died, she and [Mrs. Powell] owned and operated Bee Jay's Hairstyling Academy, a cosmetology school. In 2008, Betty [Yarbrough] and [Mrs. Powell] severed their business relationship, though [Mrs. Powell] retained her forty-percent interest in the company. Betty [Yarbrough] then brought [Mr. Yarbrough] into the business and amended her living trust to distribute her sixty-percent ownership to him upon her death. The trust named [Mr. Yarbrough] and his brother Denzil as trustees upon Betty [Yarbrough's] death and, among other

---

**2.** It is not uncommon for parties in bankruptcy to file motions for relief from stay more than once during a bankruptcy proceeding where new issues of fact arise or circumstances have changed creating new grounds for relief from stay. *See Nat'l Bank of Ark. v. Panther Mountain Land Dev., LLC (In re Panther Mountain Land Dev., LLC),* 686 F.3d 916 (8th Cir.2012) (reversing order denying creditor's fourth motion for relief from stay); *Johns–Manville Corp. v. Asbestos Litigation Grp. (In re Johns–Manville Corp.),* 40 B.R. 219, 228 (S.D.N.Y.1984) (affirming denial of second motion for relief where movant "raised no new issues of fact in its latest

request for relief from the stay"), *vacated in part by,* 41 B.R. 926 (S.D.N.Y.1984).

**3.** As further explained below, Mr. Yarbrough claims he sold the land to a third party and claims no interest in the property.

**4.** The Movants requested the Court to take judicial notice of the order from the Arkansas Court of Appeals. Under Rule 201 of the Federal Rules of Evidence, in taking judicial notice of the order, this Court may ascertain undisputed facts. FED. R. EVID. 201(b); *In re Gordon–Brown,* 340 B.R. 751, 761 n. 2 (Bankr.E.D.Pa.2006).

things, provided for distribution of certain real property.

Following Betty [Yarbrough's] death in 2009, [Mrs. Powell] sued [Mr. Yarbrough] for an accounting of the trust's assets, distributions, and expenses, in particular with regard to the real property. She later filed a supplemental complaint, adding Bee Jay's as a defendant and accusing [Mr. Yarbrough] of spending company funds for personal matters and failing to pay [Mrs. Powell] her share of the company's profits. [Mrs. Powell] asked for an accounting; for [Mr. Yarbrough's] removal as an officer; for appointment of a receiver; and for damages....

. . . .

Around [November 2011, Mrs. Powell] filed a "Second Supplemental Complaint," alleging that [Mr. Yarbrough] had signed a document releasing a mortgage that secured a loan to him from Bee Jay's. [Mrs. Powell] asked that the release be set aside and for various other relief. Neither [Mr. Yarbrough] nor Bee Jay's answered the second supplemental complaint, and [Mrs. Powell] asked for a default judgment thereon.

After several hearings, the circuit court granted [Mrs. Powell] a default judgment on her second supplemental complaint; granted her a $400,000 judgment against [Mr. Yarbrough] based on [Mr. Yarbrough's] operation of Bee Jay's; found that [Mrs. Powell] was entitled to an accounting; dissolved Bee Jay's; and appointed a receiver to wind up the company. The court also stated that it would award [Mrs. Powell] attorney's fees and costs in an amount yet to be determined.

Once the above judgments were entered, [Mr. Yarbrough] asked for a new trial. Before his motion could be heard, however, he obtained counsel and filed for bankruptcy. The bankruptcy filing automatically stayed the circuit-court action....

*Yarbrough v. Powell*, 2015 Ark. App. 218, at 1–3, 459 S.W.3d 329, 330–31.

## B. Bankruptcy Filing and Postpetition Events

The Debtors filed their voluntary bankruptcy petition under the provisions of Chapter 7 of the United States Bankruptcy Code on December 16, 2012. James F. Dowden was appointed as the Chapter 7 Trustee (the "**Trustee**").

On April 18, 2013, the Movants filed a Motion to Abandon and Relief from Stay (the "**First Motion for Relief**"). (First Mot. for Relief, Doc. No. 76). In the First Motion for Relief, the Movants sought, among other things,[5] an order (1) granting Movants relief from stay to foreclose a mortgage held by Bee Jay's on the Debtors' Residence in order to conclude corporate business and (2) granting Mrs. Powell relief from stay to liquidate her pending request for attorney fees and costs related to the $400,000 judgment. (First Mot. for Relief ¶¶ 2–3, Doc. No. 76).

The First Motion for Relief was set for hearing on August 28, 2013. On the day of the hearing, the parties announced to the Court they had reached a settlement on the First Motion for Relief and would submit an agreed order to the Court. Also set for hearing on August 28, 2013, was an objection filed by Mrs. Powell to the Debtors' claim of a homestead exemption on the Debtors' Residence. The hearing on the

---

**5.** In the First Motion for Relief, the Movants also sought an order compelling the Trustee "to abandon any preference action so that corporate business may be transacted and completed." (First Mot. for Relief ¶ 1, Doc. No. 76). That request is not relevant to this opinion.

objection to exemptions was held and the matter was taken under advisement. Because the parties announced that they had reached a settlement as to the First Motion for Relief prior to the hearing on the objection to exemptions, any settlement reached at that time would have necessarily been reached prior to the parties' knowledge of the Court's ruling on Mrs. Powell's objection to the homestead exemption. On September 10, 2013, the Court entered an order overruling Mrs. Powell's objection to the Debtors' homestead exemption and allowing the Debtors' homestead exemption in the Residence in the amount of $385,000.00. (Order Overruling Objection to Exemptions, Doc. No. 133; Debtors' Schedule C, Doc. No. 25).

On September 19, 2013, an agreed order approved by the Debtors, Mrs. Powell, Mr. Robinson, and the Trustee was entered [6] denying, in part, and granting, in part, the relief requested in the First Motion for Relief (the **"First Relief Order"**). (First Relief Order, Doc. No. 136). Pursuant to the First Relief Order, the parties agreed that relief from stay to foreclose the mortgage on the Debtors' Residence should be denied, but relief from stay to liquidate Mrs. Powell's pending request for attorney fees and costs related to the $400,000 judgment should be granted. (First Relief Order at 1, Doc. No. 136). In the First Relief Order, the parties also agreed relief from stay should be granted to allow the state court to rule on Mr. Yarbrough's pending motion to set the $400,000 judgment aside. (First Relief Order at 1, Doc. No. 136). In addition, the First Relief Order provided:

The Court further finds and orders that there shall be no collection efforts while the Pulaski Circuit Court is making its determination as to the judgment and as to any attorney fees and costs arising therefrom. The state court decision, when final under state law, shall be the final determination as to the amount of the judgment and as to the amount of any attorney fees and costs arising from the judgment. When those two matters are final under state law, this Court will conclude the issues that remain in this bankruptcy case.

(First Relief Order at 1–2, Doc. No. 136).

In addition to the First Relief Order, another agreed order was entered in the case on September 19, 2013 (the **"Insurance Order"**). The Insurance Order was approved by the Debtors, Mrs. Powell, and the Trustee. It required Mr. Yarbrough to maintain insurance on the Residence and to include Bee Jay's as a loss payee on the insurance policy. (Insurance Order, Doc. No. 135).

After the First Motion for Relief was settled and the First Relief Order entered, the following events occurred in state court, as stated by the Arkansas Court of Appeals:

A hearing was held, and the circuit court denied [Mr. Yarbrough's] motion to set aside [the $400,000 judgment entered against him]. [Mr. Yarbrough] moved for reconsideration and also filed several motions to dismiss, primarily on the ground that he had not been properly served with the second supplemental complaint. The court denied [Mr. Yar-

---

6. The Honorable Audrey R. Evans, now retired, presided over the case at the time of the entry of the First Relief Order. The bankruptcy case was transferred to the undersigned on January 7, 2015. On the first day of hearings, April 28, 2015, this Court made an oral certification on the record pursuant to Rule 63 of the Federal Rules of Civil Procedure, made applicable to these proceedings by Rule 9028 of the Federal Rules of Bankruptcy Procedure, certifying her familiarity with the record and her determination that the matter before the Court could be completed without prejudice to the parties. *See* FED. R. BANKR. P. 9028.

brough's] motions by an order entered on May 20, 2014. That same day, the court entered an order denying [Mrs. Powell's] request for attorney's fees.

*Yarbrough v. Powell,* 2015 Ark. App. 218, at 3, 459 S.W.3d at 331. Mr. Yarbrough appealed the circuit court's order denying his post-hearing motions to dismiss the complaints filed against him, and Mrs. Powell cross-appealed the circuit court's order denying her motion for attorney fees. *Yarbrough v. Powell,* 2015 Ark. App. 218, at 1, 459 S.W.3d at 330.

On June 18, 2014, the Movants filed a second Motion for Relief from Stay and Motion to Abandon ("**Second Motion for Relief**") with this Court. (Second Mot. for Relief, Doc. No. 166). In the Second Motion for Relief, the Movants sought an order (1) granting Movants relief from stay to proceed against the Debtors' Residence; (2) abandoning the Five Acre Tract, which Mr. Yarbrough alleged he sold prepetition, but that the Movants alleged was still in the name of Terry Yarbrough; and (3) compelling the Trustee to abandon the Twenty Acres. (Second Mot. for Relief ¶¶ 2, 4–6, Doc. No. 166). In support of the Second Motion for Relief, the Movants asserted that the Residence was no longer property of the estate because of the Court's order allowing the Debtors to claim a homestead exemption in the Residence and also asserted that their interests were not adequately protected because no payments were being made on the note and mortgage and the insurance on the Residence had lapsed. (Second Mot. for Relief ¶¶ 1–2, Doc. No. 166).

The Trustee filed a response to the Second Motion for Relief stating that the Trustee "has no objection to the abandonment of the Debtors' interest in the homestead . . . and the [Five Acre Tract] . . . ."

(Trustee's Resp. to Second Mot. for Relief ¶ 8, Doc. No. 170). The Trustee did object to the Twenty Acres being abandoned. (Trustee's Resp. to Second Mot. for Relief ¶ 7, Doc. No. 170).

The Debtors responded to the Second Motion for Relief, citing to this Court's First Relief Order, which they alleged granted relief from stay to allow only two issues to proceed in state court: (1) Jane Powell's pending state court request for attorney fees, and (2) the Debtors' pending state court motion seeking to set aside the $400,000 judgment. (Debtors' Resp. to Second Mot. for Relief ¶ 4, Doc. No. 172). The Debtors alleged these two issues remained pending before the state court as notices of appeal were "recently filed by each of the parties." (Debtors' Resp. to Second Mot. for Relief ¶ 4, Doc. No. 172). The Debtors also asserted in their response that the Residence was "properly insured." (Debtors' Resp. to Second Mot. for Relief ¶ 7, Doc. No. 172). The Debtors objected to abandonment of the Five Acre Tract and the Twenty Acres, stating that the Trustee's approach "up to this point" had been to leave the properties alone "pending the outcome of other matters in this case and in the state court case" and that the approach by the Trustee should be "maintained." (Debtors' Resp. to Second Mot. for Relief ¶ 11, Doc. No. 172).

The Second Motion for Relief was set for hearing on August 29, 2014. Prior to that date, on July 31, 2014, this Court[7] held a hearing on a motion to quash subpoena filed by the Arkansas Department of Finance and Administration in the Debtors' bankruptcy case. During that proceeding, the Court granted Mrs. Powell's oral request for a pre-hearing conference on the Second Motion for Relief. At the pre-hearing conference the Movants argued, among other things, that the cir-

---

7. Honorable Audrey R. Evans presiding.

cuit court orders denying both Mrs. Powell's attorney fee request and Mr. Yarbrough's motion to set aside and various post-hearing motions were "final orders" and argued that collection efforts could resume. The parties also represented to the Court that the validity of the mortgage was involved in the state court action. No evidence was presented at the pre-hearing conference. Following the pre-hearing conference, on August 6, 2014, the Court entered an order (the **"Second Relief Order"**)[8] granting the motion to quash and continuing the hearing on the Second Motion for Relief, stating, in part:

Upon [Jane] Powell's request and with no objections from the other parties present, the Court also held a pre-trial hearing on the [Second Motion for Relief] to determine whether the Court should hear that motion as scheduled on August 29, 2014, or wait until the State Court appeals process had completed. The [Second Motion for Relief] at issue was filed on June 18, 2014, and sought relief from the stay to allow Bee Jay's to foreclose on a mortgage it holds on the Debtors' homestead. The [Second Motion for Relief] also sought abandonment of two other pieces of property on which [Jane] Powell holds a judicial lien. Both the validity of the mortgage held by Bee Jay's and the judgment supporting [Jane] Powell's judicial lien are the subject of the pending appeal in State Court.

The Court previously entered an order in this case documenting a settlement on [the First Motion for Relief] filed by [Jane] Powell and [Irvin] Robinson. That order denied relief from stay to [Irvin] Robinson (as receiver for Bee Jay's) to foreclose on a mortgage on the Debtors' homestead, but granted relief from stay to liquidate a pending request in State Court to determine the amount due in attorney fees and costs, in reference to a $400,000 judgment against Debtor Terry Yarbrough. *See Order* entered September 19, 2013 (Dkt.# 136). The Court further granted Debtors relief from stay to seek a ruling in State Court on a pending letter/motion filed by Debtor Terry Yarbrough to set aside the $400,000 judgment on the grounds of fraud and embezzlement. The Court further stated:

The Court further finds and orders that there shall be no collection efforts while the Pulaski Circuit Court is making its determination as to the judgment and as to any attorney fees and costs arising therefrom. The state court decision, when final under state law, shall be the final determination as to the amount of the judgment and as to the amount of any attorney fees and costs arising from the judgment. When those two matters are final under state law, this Court will conclude the issues that remain in this bankruptcy case.

On behalf of [Jane] Powell and [Irvin] Robinson, Sutter argued that the Circuit Court ruling[s] denying Debtor's efforts to set aside the $400,000 judgment are

---

**8.** Two orders were actually entered on August 6, 2014. One order contained the heading "Order Denying Motion to Quash and Continuing Motion for Relief from Stay and Abandonment" (Doc. No. 193), and the other order contained the heading "Amended and Substituted Order Granting Motion to Quash and Continuing Motion for Relief from Stay and Abandonment" (Doc. No. 194). The only discernible difference in the two orders is the correction in the heading on the disposition of the motion to quash from "Denying" to "Granting." The second order entered on August 6, 2014 (Doc. No. 194) was an amended and substituted order of the earlier August 6, 2014 order (Doc. No. 193), not the First Relief Order. The second order entered on August 6, 2014 (Doc. No. 194) is defined to be the "Second Relief Order."

final under Arkansas law and should be afforded *res judicata* effect, and that it would be more efficient to allow the foreclosure and issues related to the other pieces of property to proceed in State Court without the involvement of the Trustee. Sutter also argued that the [Second Motion for Relief] filed by Bee Jay's was not stayed by the September 19, 2013 Order. Having considered those arguments, the Court orally ruled that when entering the Order, which was agreed to by the parties, it was the Court's intent to stay these matters until a final unappealable decision had been made in State Court. The Court further found that it would be a waste of estate and judicial resources to hear the [Second Motion for Relief] while these issues are pending in State Court. While the status of [Jane] Powell and Bee Jay's as secured creditors is pending in State Court, the Court cannot afford them the relief they seek. Granting relief from stay could lead to inconsistent rulings and irreparable harm to this estate, and needlessly incur additional litigation expenses by litigating issues in this Court that may be entirely moot once the State Court appellate process is complete.

For these reasons, it is hereby

. . . .

ORDERED that the [Second Motion for Relief] is CONTINUED to be set by subsequent notice pending the outcome of the State Court appeals process and the issuance of a final non-appealable order on those issues . . . .

(Second Relief Order at 2–4, Doc. No. 194).

Following the entry of the Second Relief Order, the parties proceeded with their appeals before the state court. On April 8, 2015, the Arkansas Court of Appeals delivered an opinion dismissing both appeals, holding:

The present case began when Jane [Powell] sued for an accounting regarding her late mother's trust. However, the record does not reflect that her claims involving the trust have been adjudicated. Further, the circuit court ordered an accounting with regard to Bee Jay's and ordered the receiver to marshal Bee Jay's assets and wind up the corporation. No order in the record reveals that those actions have yet taken place. Thus, further actions by the parties and the court are necessary to resolve the claims in the case, and we do not yet have a final order.

*Yarbrough v. Powell*, 2015 Ark. App. 218, at 4, 459 S.W.3d at 332. On April 13, 2015, the Movants filed their Renewed Motion to Lift Stay, to Abandon Property, and for a Scheduling Order (**"Third Motion for Relief"**). (Third Mot. for Relief, Doc. No. 209).

In the Third Motion for Relief, the Movants seek an order (1) granting Movants relief from stay to "take all actions necessary to obtain a final order, as well as to take all actions to protect their interests, including but not limited to foreclosure and contempt proceedings;" (2) granting relief from stay as to the Residence; and (3) abandoning the Five Acre Tract in which the Debtors claim no interest. (Third Mot. for Relief ¶¶ 1–2, 4, Doc. No. 209). In support of the Third Motion for Relief, the Movants allege that the Residence is no longer property of the estate because of this Court's order allowing the Debtors to claim a homestead exemption in the Residence. (Third Mot. for Relief ¶ 2, Doc. No. 209). They further allege that Bee Jay's interest in the Residence is not adequately protected because of the deterioration of the collateral. (Third Mot. for Relief ¶ 3, Doc. No. 209).

The Debtors responded to the Third Motion for Relief, agreeing "that relief from the stay is necessary and should be granted so that final orders can be ob-

tained" on the issues that were appealed. (Debtors' Resp. to Third Mot. for Relief ¶ A.1, Doc. No. 212). The Debtors assert, however, that any order granting relief from stay must "necessarily reiterate and reaffirm this Court's previous orders that while the parties are litigating the State Court matters, there shall be no collection efforts and no foreclosure." (Debtors' Resp. to Third Mot. for Relief ¶ A.2, Doc. No. 212). The Debtors object to the remaining relief sought by the Movants in the Third Motion for Relief. (Debtors' Resp. to Third Mot. for Relief ¶ B.1, Doc. No. 212).

## C. Hearing on Third Motion for Relief

The Third Motion for Relief was set for hearing on April 28, 2015, at which time the parties presented arguments on their respective positions and then agreed to continue the matter to a later date to present testimony and other evidence. The Movants argued that to obtain a final order, they would need to "wind up" the business of Bee Jay's and to do so the receiver would need to liquidate the only remaining asset of Bee Jay's: the note and mortgage Bee Jay's asserts it holds on the Debtors' Residence. (April Tr. at 10–11, 31–32).[9] The Movants argued further that liquidating the mortgage would necessitate the initiation of a foreclosure action, a collection action currently stayed by this Court. Alternatively, the Movants argued that they could initiate a declaratory judgment action to have the state court determine the validity of the mortgage. (April Tr. at 56).

The Debtors did not agree to either of the approaches suggested by Movants. They instead suggested that the Movants dismiss two of the claims the Arkansas Court of Appeals found needed to be re-

solved for finality, namely, Jane Powell's request for an accounting and the winding up of the business, arguing that the Movants had already abandoned those two claims. (April Tr. at 18). The Debtors further argued that the doctrine of law of the case should be applied to this Court's prior orders and this Court should continue to bar the Movants from taking any collection actions, including foreclosure, until the decisions on Jane Powell's request for attorney fees and the Debtors' request to set aside the judgment are final, nonappealable orders. (April Tr. at 16–18). The Debtors did agree that the parties needed relief from stay to proceed in state court to resolve the issues that had previously been appealed. (April Tr. at 16).

Counsel for the Trustee raised no objection to the state court determining issues related to the Residence. (April Tr. at 43–44). As to the Five Acre Tract, counsel for the Trustee stated that "the burden to the estate likely outweighs the benefit ... because [of] ... the state law issues involved, as well [as] what sounds like multiple competing liens." (April Tr. at 25). He concluded "there is no benefit to the estate." (April Tr. at 25, 44). The Trustee did not oppose abandonment of the Five Acre Tract and agreed the property "should be abandoned." (April Tr. at 25, 44). Counsel for the Trustee further stated that the Trustee is awaiting the state court decisions to determine how to proceed with the administration of the case and a pending adversary proceeding. (April Tr. at 46).

At the continuation of the hearing on June 9, 2015, the Movants introduced documentary evidence and presented the testimony of five witnesses: Terry Yar-

---

9. "April Tr." refers to the transcript of the hearing held before this Court on April 28, 2015, on the Third Motion for Relief, which

hearing was continued to and completed on June 9, 2015.

brough, Jane Powell, Richard Powell, Ted Upshaw, and Irvin Benton Robinson. The Debtors also presented documentary evidence and the testimony of Terry Yarbrough. The following are the Court's findings of fact as to the evidence presented.[10]

Jane Powell testified that Terry Yarbrough is her brother. (June Tr. at 17).[11] She currently owns 100% of Bee Jay's, which was at one time a beauty school. (June Tr. at 17–18). She explained that she has owned 40% of the business for some time and purchased Terry Yarbrough's 60% interest from the Trustee during the bankruptcy proceeding. (June Tr. at 18). Mrs. Powell testified that Bee Jay's has no assets other than the note and mortgage it holds on the Debtors' Residence. (June Tr. at 18). She testified that the last payment made on the mortgage was made in January 2008. (June Tr. at 17). Mrs. Powell also testified that the mortgage was renewed in 2010. (June Tr. at 17). Mrs. Powell stated that Bee Jay's does not have any money available to pay for insurance on the Residence. (June Tr. at 20). It was Mrs. Powell's testimony that she and her husband, personally, have paid the insurance premiums on the Residence for the past two years to keep the property insured. (June Tr. at 20, 22–23). She added that they would not be able to continue paying for the insurance much longer. (June Tr. at 20). Richard Powell, Mrs. Powell's husband, corroborated this testimony, stating that he believes they have paid the insurance on the Residence for the past two and one-half years. (June Tr. at 25). Mr. Powell testified that the

insurance premiums totaled approximately $1,800.00 annually. (June Tr. at 25).

Terry Yarbrough testified that he is currently living with a friend and his aunt. (June Tr. at 14). He goes to the Residence at least "every week" to collect the mail and sometimes spends the night. (June Tr. at 14). There is no electricity or running water at the Residence. (June Tr. at 14). Mr. Yarbrough testified that the Residence was vandalized and about ten windows were broken, but that he had boarded up all the broken windows. (June Tr. at 15).

Mr. Powell, who has been with the sheriff's office for the past thirty-three years and is currently a lieutenant with the sheriff's department, testified that he is familiar with the Residence and goes by the property at least twice a week. (June Tr. at 24–25). Mr. Powell testified that he was at the Residence prior to the hearing and saw broken windows, some of which were not covered up. (June Tr. at 25–27). In addition to his position with the sheriff's department, Mr. Powell holds a contractor's license and has performed contracting services for the past thirty years, primarily remodeling houses the past few years. (June Tr. at 27). Mr. Powell testified about the condition of the Residence. (June Tr. at 25–31). He stated that he was present at the Residence prior to the hearing, but was not allowed to inspect the inside of the property. (June Tr. at 25–26). It was his testimony that the Residence has been deteriorating. (June Tr. at 27). For example, he testified that the yard had not been mowed in the last one and one-half years, a power line had been

---

10. The June 9, 2015 hearing was the first time evidence was introduced regarding any of the Movants' motions for relief from stay. The First Motion for Relief was settled by agreement of the parties and the Second Motion for Relief was continued after the pre-hearing conference held on July 31, 2014.

11. "June Tr." refers to the transcript of the hearing held before this Court on June 9, 2015, on the Third Motion for Relief, which hearing began on April 28, 2015, and continued to and completed on June 9, 2015.

torn away from the house, and the "whole property is just dilapidated." (June Tr. at 27–28). He also testified that in his experience as a police officer he believes vacant property is "a hundred percent" more likely to be vandalized than occupied property. (June Tr. at 28).

Ted Upshaw, a licensed general contractor and licensed real estate broker who refurbishes, remodels, and resells real property, also testified about the condition of the Residence. (June Tr. at 32). Mr. Upshaw has been buying and selling real property in central Arkansas for the past twenty-two to twenty-three years. (June Tr. at 32). Mr. Upshaw testified that he viewed the Residence in late 2012 and viewed the Residence again about thirty days before the hearing. (June Tr. at 32–33). It was Mr. Upshaw's opinion that the Residence was deteriorating in value. (June Tr. at 33). When asked the reasons for his opinion, Mr. Upshaw replied "as the property sits vacant, you have a lot of moisture accumulation, you have damage through insect … infestation … you have vandalism." (June Tr. at 33). It was also Mr. Upshaw's opinion that the Residence is not currently safe to occupy based on there being "no utilities to the property," "open junction boxes with exposed wiring throughout the property," and the inability to secure the windows and doors on the property. (June Tr. at 33). The Movants introduced an "Inspection Summary" report into evidence memorializing Mr. Upshaw's inspection of the Residence performed approximately thirty days prior to the hearing. (Movants' Ex. 1; June Tr. at 34). The inspection report makes several recommendations for slowing the rate of depreciation of the Residence including:

trash removal, yard maintenance, securing electrical outlets in junction boxes, boarding up windows, and addressing mold issues. (Movants' Ex. 1; June Tr. at 35–36). Mr. Upshaw estimated $8,100.00 as the amount necessary to bring the Residence up to a "safe and sustainable" condition. (Movants' Ex. 1; June Tr. at 36).

In comparing the current condition of the Residence to the condition of the Residence two years ago, Mr. Upshaw testified that the property had deteriorated. (June Tr. at 36). Examples of the deterioration included a general decline in the overall appearance of the property, an increase in the number of broken windows, and evidence of mold and mildew. (June Tr. at 36–37). As to the value of the Residence, Mr. Upshaw said in his opinion "a real estate investor or a rehabber of some sort" would probably be willing to pay around $150,000.00 for the Residence. (June Tr. at 37).

Mr. Yarbrough was questioned about the mortgage Bee Jay's asserts it holds on his Residence.[12] He testified that pursuant to an arrangement between him and his mother, he never made any payments on the note that relates to the mortgage. (June Tr. at 15, 53–54). Mr. Yarbrough testified that he signed the last renewal documents in 2010. (June Tr. at 15). Mr. Yarbrough also testified that certain payments he made to Bee Jay's were actually to repay various loans Bee Jay's made to him in 2008 and thereafter. (June Tr. at 50–52). It was his testimony that these payments related to the separate loans and were not related to the note and mortgage on his Residence. (June Tr. at 50–52). Significantly, when asked whether he cur-

---

**12.** The parties agree and have represented to this Court that the issues of the validity of the mortgage and the validity of the $400,000 judgment are currently pending in the state court action. Although some evidence presented regarding these issues is included in this order, nothing in this order is intended to be a determination regarding the validity of the mortgage or judgment.

rently had insurance on the Residence Mr. Yarbrough admitted that he did not. (June Tr. at 16). He further testified that he cannot work and has applied for disability. (June Tr. at 16).

Irvin Robinson was called to testify by the Movants. Mr. Robinson is the court appointed receiver in the state court action initiated by Mrs. Powell against Mr. Yarbrough and Bee Jay's. (June Tr. at 42–43). Mr. Robinson agreed with Mrs. Powell's testimony that the "sole remaining asset" of Bee Jay's is the note secured by the mortgage on the Debtors' Residence. (June Tr. at 45).

The Movants recalled Terry Yarbrough to the stand to inquire about the Five Acre Tract. (June Tr. at 48). Mr. Yarbrough testified that he did not claim any interest in that property. (June Tr. at 48). He explained that he sold his interest in the property to a third party for $67,000.00 and delivered the deed to the purchaser. (Tr. at 48–49). Mr. Yarbrough testified that for reasons he did not know, the deed was never recorded. (June Tr. at 49).

During his case-in-chief, Mr. Yarbrough testified in response to Mr. Upshaw's inspection summary on the deterioration of the Residence. (June Tr. at 55–59). Mr. Yarbrough testified that he was a licensed contractor until 2008 when he allowed his license to expire. (June Tr. at 56). He explained that he built the Residence himself. (June Tr. at 53). He agreed that the Residence needed to be cleaned up but stated that he is "doing the best [he] can." (June Tr. at 55). He also testified that he has made numerous repairs to the Residence and secured the windows "to the best of [his] ability with the resources" that he had. (June Tr. at 55). In rebutting the testimony of Mr. Upshaw, Mr. Yarbrough stated that the inspection sum-

mary was misleading, adding that windows have been boarded up but "maybe not to [Mr. Upshaw's] specifications." (June Tr. at 57). He also asserted that the mold is "a little green mold" and not "black mold." (June Tr. at 57). He admitted that there are "some open-end receptacles ... because the baseboards were not installed yet," explaining that he opted to put the electrical outlets in the baseboards instead of the sheetrock. (June Tr. at 57–58). He explained that "as [he] progressed with the home" he would finish the electrical outlets himself. (June Tr. at 58).

The Debtors introduced a copy of the Pulaski County, Arkansas, Residential Property Card for the Residence that reflected a value on the Residence of $305,650.00. (Debtors' Ex. 1). The assessed value has remained the same from 2012 through 2015. (Debtors' Ex. 1).

The Movants argued that "changed circumstances" existed to allow this Court to deviate from its prior orders, stating that the decision from the Arkansas Court of Appeals "came out of the blue." (April Tr. at 26). They further argued they were in a "Catch–22" situation: they cannot appeal the state court's rulings until there is a final judgment but to resolve all the claims to obtain the final judgment, the receiver must liquidate the note and mortgage. The Movants argued that unless this Court allows the Movants to pursue foreclosure in order to wind up the business affairs of Bee Jay's, they will be without a forum to seek their state law remedies.[13] (June Tr. at 90).

In closing arguments, the Debtors argued that this Court should continue to stay collection actions, including foreclosure of the mortgage, because then the state court would have "no alternative [but to] ... re-word [the] 400,000 dollar judg-

---

13. Movants acknowledged the possibility of filing a Rule 54(b) certificate in order to allow the appeal process to go forward, but argued the certification was not "guaranteed" and could result in more expense and delay. (June Tr. at 90–92).

ment where the Circuit Court ordered that the assets of Bee Jay's were to be wound up...." (June Tr. at 73). The Debtors further argued that the "simple, easy thing" would be for the Movants to non-suit the causes of action the Arkansas Court of Appeals ruled were necessary to be resolved for a final, appealable order. (June Tr. at 73).

### III. ISSUES PRESENTED

To determine whether the relief sought in the Third Motion for Relief should be granted, this Court must determine the following: (1) whether grounds exist to grant Movants' request to relax the automatic stay so that they may pursue their state law remedies as to the note and mortgage, including initiating an action in state court to pursue foreclosure on the Residence; (2) whether grounds exist to compel abandonment of the Five Acre Tract; (3) whether the Court's First Relief Order and Second Relief Order represent the law of the case and, if so; (4) whether there are changed circumstances or the existence of a manifest injustice that precludes application of the law of the case doctrine so that some or all of the relief sought in the Third Motion for Relief may be granted, including whether the Movants may execute or otherwise take action to collect the $400,000 state court judgment.

### IV. APPLICABLE LAW AND ANALYSIS

**A. State Law Remedies as to the Note and Mortgage**

In the Third Motion for Relief, Movants seek relief from stay in order to pursue their state law remedies as to the note and mortgage, including initiating an action to foreclose the mortgage they assert Bee Jay's holds on the Residence. They assert that the Residence is no longer property of the estate because of this Court's prior ruling allowing the Debtors to exempt the

Residence, and they argue there is accordingly "no reason to maintain the stay." (Third Mot. for Relief ¶ 2, Doc. No. 209). In addition, the Movants assert that Bee Jay's is not adequately protected because of the condition of the Residence and should be granted relief from stay. At the hearing, Movants also argued that in order to wind up the business of Bee Jay's, which they must do in order to obtain a final order in the state court litigation, the mortgage would have to be liquidated. For the reasons stated below, grounds exist to lift the automatic stay to allow the Movants to pursue a foreclosure action in state court, and the stay should be lifted unless the law of the case doctrine precludes this Court from doing so.

1. *Effect of Homestead Exemption on Automatic Stay*

▮ First, the Movants are correct that exempt property does not constitute property of the estate and is thus not protected by the provisions of the automatic stay protecting property of the estate. However, the Movants correctly sought relief from stay from this Court before pursuing foreclosure because the automatic stay remained in place as to the Debtors and property of the Debtors and thus stayed any action to foreclose the mortgage on the Residence as further explained below.

The commencement of a case under Chapter 7 of the United States Bankruptcy Code creates a bankruptcy estate. 11 U.S.C. § 541(a) (2012). This estate includes all legal or equitable interests of the debtor in property as of the commencement of the case. 11 U.S.C. § 541(a)(1) (2012). Section 362(a) provides protections to property of the estate by staying certain actions against property of the estate. 11 U.S.C. § 362(a)(2)–(4) (2012). The protections afforded under Section 362(a) as to property of the estate continue until the property is no longer property of the estate. 11 U.S.C. § 362(c)(1) (2012).

Section 522 of the Bankruptcy Code allows the debtor to claim certain property as exempt from the bankruptcy estate. 11 U.S.C. § 522(b) (2012). The property claimed exempt is then retained by the debtor to assist in the debtor's "fresh start." *Benn v. Cole (In re Benn)*, 491 F.3d 811, 813 (8th Cir.2007). " '[E]xemption' is a term of art in bankruptcy and ... '[w]hile exemption may mean different things in different contexts, in the context of [11 U.S.C] § 522, it refers to laws enacted by the legislative branch which explicitly identify property [that] judgment debtors can keep away from creditors for reasons of public policy.' " *Id.* at 814 (quoting *Benn v. Cole (In re Benn)*, 340 B.R. 905, 914 (8th Cir. BAP 2006)).

■ The Debtors in this case claimed a homestead exemption in the Residence and, over the objection of Mrs. Powell, the Court allowed the Debtors' claim of homestead exemption. The exemption claimed is more than the value of the Residence, leaving no equity or benefit to be administered by the Trustee for the bankruptcy estate.[14] *Soost v. NAH, Inc. (In re Soost)*, 262 B.R. 68, 72 (8th Cir. BAP 2001) (only where the value of an asset exceeds the amount of the claimed exemption does the bankruptcy estate retain an interest in the asset, which the trustee may administer). The Movants are correct that once the Court allowed the homestead exemption, the Residence was no longer property of the bankruptcy estate. *Tigue v. Sosne (In re Tigue)*, 363 B.R. 67, 71 (8th Cir. BAP 2007) (holding that once the debtor's exemption was allowed the property ceased being property of the estate); *In re*

*Soost*, 262 B.R. at 72 (holding exempted property is "no longer part of the bankruptcy estate") (citing *Abramowitz v. Palmer*, 999 F.2d 1274, 1276–77 (8th Cir. 1993)). It follows that the Residence is no longer protected by the provisions of the automatic stay applicable to property of the estate. *See* 11 U.S.C. § 362(c)(1) (2012). This conclusion, however, does not end the analysis of whether any other provisions of the automatic stay apply to the Movants' desire to foreclose on the Debtors' Residence.

■ "When a debtor exempts property ... that property is removed from the estate and vests in the debtor." *In re Crockett*, 204 B.R. 36, 37 (Bankr.E.D.Ark. 1996) (citing 11 U.S.C. § 522(b); *In re Hoffmeister*, 191 B.R. 875 (D.Kan.1996)). In addition to actions stayed against property of the estate, Section 362(a) provides additional protections to the debtor and property of the debtor. *See* 11 U.S.C. § 362(a)(1), (2) & (5) (2012); *see also Nev. Power Co. v. Calpine Corp. (In re Calpine Corp.)*, 365 B.R. 401, 408 (S.D.N.Y.2007) ("By its terms, section 362 applies ... to debtors, property of the debtor, or property of the estate...."). Although the Residence is no longer property of the estate, Section 362(a) continues to stay actions against the Debtors and property of the Debtors until the earliest of the time the case is closed, dismissed, or in an individual Chapter 7 proceeding, the time a discharge is granted or denied. 11 U.S.C. § 362(c)(2) (2012). None of the three conditions has been met as to Mr. Yarbrough in this case.[15] Therefore, the automatic stay applies, and the Movants must obtain

---

14. The Debtors claimed a $385,000 exemption in their homestead. (Order Overruling Objection to Exemptions, Doc. No. 133; Debtors' Schedule C, Doc. No. 25). The valuation evidence introduced by both the Movants and the Debtors valued the Residence at

an amount below the amount claimed as exempt.

15. A complaint objecting to Terry Yarbrough's discharge was filed on May 22, 2013, as Case No. AP 4:13–01060. The adversary proceeding is still pending. There-

relief from stay as to Mr. Yarbrough and property of Mr. Yarbrough in order to proceed with the foreclosure of the Residence.

### 2. Grounds to Lift the Stay for Movants to Pursue Their State Law Remedies

The Court finds that grounds exist to lift the stay to allow Movants to pursue their state law remedies as to the note and mortgage.

Under Section 362(d)(1), the Court may lift the automatic stay for "cause." 11 U.S.C. § 362(d)(1) (2012). "The stay may be lifted 'for cause' to allow litigation involving the debtor to proceed in another forum under certain circumstances." *In re Living Hope S.E., LLC*, 505 B.R. 237, 242 (Bankr.E.D.Ark.2014) (citing *Blan v. Nachogdoches Cnty. Hosp. (In re Blan)*, 237 B.R. 737 (8th Cir. BAP 1999)). The creditor seeking relief from stay must establish that cause exists by prima facie evidence, but the debtor bears the ultimate burden of proof in opposing the motion for relief, except where equity is at issue. *Id.* (citing 11 U.S.C. § 362(g); *In re Anton*, 145 B.R. 767, 769 (Bankr.E.D.N.Y.1992)).

In determining whether cause exists to lift the stay to allow litigation involving the debtor to proceed in another forum, courts "must balance the potential prejudice to the [d]ebtor, the bankruptcy estate and to the other creditors against the hardship to the moving party if it is not allowed to proceed in state court." *Id.* (citing *In re Blan*, 237 B.R. at 739 (citing *Internal Revenue Serv. v. Robinson (In re Robinson)*, 169 B.R. 356, 359 (E.D.Va. 1994); *Matter of United Imports*, 203 B.R. 162, 166 (Bankr.D.Neb.1996); *In re Marvin Johnson's Auto Service, Inc.*, 192 B.R. 1008, 1014 (Bankr.N.D.Ala.1996); *Smith v.*

*Tricare Rehabilitation Sys., Inc. (In re Tricare Rehabilitation Sys., Inc.)*, 181 B.R. 569, 572–73 (Bankr.N.D.Ala.1994))). Courts use the following factors to balance the hardships between the parties: "(1) judicial economy; (2) trial readiness; (3) the resolution of preliminary bankruptcy issues; (4) the creditor's chance of success on the merits; and (5) the cost of defense or other potential burden to the bankruptcy estate and the impact of the litigation on other creditors." *Id.* at 243 (citing *In re Blan*, 237 B.R. at 739 (citing *United Imports*, 203 B.R. at 167; *In re Johnson*, 115 B.R. 634, 636 (Bankr.D.Minn.1989); *In re Curtis*, 40 B.R. 795, 799–800 (Bankr. D.Utah 1984))). "Not all factors must be present, and equal weight need not be given to each factor." *Id.* (citing *In re Anton*, 145 B.R. at 770).

The Court finds that the factors weigh in favor of lifting the stay. Judicial economy is served by allowing the Movants to pursue their remedies as to the note and mortgage in state court. The Circuit Court of Pulaski County is familiar with the parties and issues in this matter. The state court has already ruled on several issues, and has ordered the wind up of the business of Bee Jay's. The Movants assert that to wind up the business they must liquidate the note and mortgage, the only remaining assets of the company. The Movants and the Debtors also agree and have represented to this Court that the validity of the mortgage is an issue currently pending before the state court. Because of the representations of both parties, the state court is the proper court to determine the enforceability of the note and mortgage and is the proper court to hear any action to foreclose the mortgage. For these reasons, judicial economy is served by lifting the stay to allow the

---

fore, as to Terry Yarbrough, the discharge has not been granted or denied as of the date of this order. Trace Poole Yarbrough was grant-

ed a discharge on September 22, 2015. (Doc. No. 224).

foreclosure or other action on the note and mortgage to take place in state court.

Preliminary bankruptcy issues have also already been determined in this case, giving additional support for relief from stay. The Debtors have been allowed to exempt their equity in the Residence and the Residence is no longer property of the estate. The Trustee has had an opportunity to evaluate the estate's interest, if any, in the Residence and has determined that he has no objection to the state court determining issues related to this property. Foreclosure is a state law cause of action and appropriately heard by the state court.

In addition, without deciding whether the Movants are likely to be successful in any foreclosure action, the Court finds that the Movants have demonstrated they have a colorable claim to be litigated before the state court. *See Montgomery v. Dennis Joslin Co. II, LLC (In re Montgomery),* 262 B.R. 772, 775 (8th Cir. BAP 2001) (hearings on motions for relief are summary proceedings, and the court's consideration of evidence should stop "as soon as it appears that the movant has a 'colorable claim' to the property in question.") (citing *Grella v. Salem Five Cent Sav. Bank (In re Grella)* 42 F.3d 26, 32 (1st Cir.1994); *In re Vitreous Steel Prods. Co.,* 911 F.2d 1223, 1234 (7th Cir.1990); *In re Quality Elecs. Centers, Inc.,* 57 B.R. 288, 290 (Bankr.D.N.M.1986)). Although the parties dispute the enforceability of the note and mortgage, the Movants and Mr. Yarbrough acknowledge the existence of a mortgage on the Debtors' Residence in favor of Bee Jay's and the existence of a note related to the mortgage. The testimony is also consistent that certain renewal documents were signed by Mr. Yarbrough related to the note and mortgage. The testimony of Mrs. Powell, Mr. Robinson, and Mr. Yarbrough, taken together, gives the Movants a "colorable claim" to the Residence, the enforceability and validity of which must be decided by the state court.

Finally, grounds for relief from stay are further established by the fact that the foreclosure action should not significantly burden the bankruptcy estate. The Debtors have claimed the Residence as their exempt homestead. By doing so, the Debtors have claimed an exemption in the equity that may be in the Residence and, therefore, the bankruptcy estate will not receive any funds for the benefit of unsecured creditors from any disposition of the Residence, regardless of the outcome of the various state law claims.[16] "It has long been held that once the property is removed from the estate, and the trustee has declared that the estate has no interest in that property, there is no cause for the court to exercise jurisdiction over that property or resolve disputes regarding that property." *Crockett,* 204 B.R. at 37 (citing *Zapalac v. White,* 9 F.Supp. 419 (S.D.Tex.1934)).

Based on the foregoing, the Court finds that "cause" exists under Section 362(d)(1)[17] to grant the Movants relief

---

16. *See supra* note 14.

17. In addition to other arguments, the Movants argued that they should be granted relief from stay under Section 362(d)(1) because their interest in the Residence is not adequately protected. Under Section 362(d)(1) relief from stay may be granted for cause, including the lack of adequate protection "of *an interest in property of such party in interest.*" 11 U.S.C. § 362(d)(1) (2012) (emphasis added). Based on the parties' arguments that the enforceability of the mortgage is at issue before the state court, this Court will not determine whether the Movants have an interest in the Residence pursuant to the mortgage. For these reasons, this Court in granting relief from stay is not deciding whether Movants are adequately protected. However, from the evidence it is clear that any interest holder in the Residence is being adversely affected by the lack of insurance on the Resi-

from stay to pursue their state law remedies as to the note and mortgage, including pursuing an action in state court to foreclose the mortgage on the Residence, unless the law of the case doctrine prevents the Court from altering its previous rulings.

### B. Abandonment of the Five Acre Tract

■ In the Third Motion for Relief, the Movants renewed their request to have the Five Acre Tract abandoned from the estate. The Movants have claimed the property is subject to the $400,000 judgment lien because, although Mr. Yarbrough claims he sold and delivered a deed to the property to a third party, the property remains in the name of Mr. Yarbrough. Section 554(b) provides that on the "request of a party in interest and after notice and a hearing, the court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(b) (2012). "The party seeking abandonment must establish that the property is either burdensome or of inconsequential benefit and value." *Alexander v. Jensen–Carter (In re Alexander)*, 289 B.R. 711, 715 (8th Cir. BAP 2003), *aff'd*, 80 Fed.Appx. 540 (8th Cir.2003).

■ At the hearing on the Third Motion for Relief, counsel for the Trustee stated that the Five Acre Tract provided no benefit to the estate and that the burden would outweigh any benefit because of the state law issues and multiple competing liens involved. (April Tr. at 25). The Trustee did not oppose abandonment of the Five Acre Tract and agreed the prop-

erty "should be abandoned." (April Tr. at 25). The Debtors responded and objected to the request for abandonment, stating that no collection efforts should be allowed and the First Relief Order and Second Relief Order should remain in full force and effect. (June Tr. at 73).

The testimony was clear that the Five Acre Tract is burdensome and of no value or benefit to the estate. In fact, Mr. Yarbrough testified that he does not claim any interest in the property. The evidence was clear that he believes he sold the property and even delivered a deed to the purchaser. The evidence was also clear that the Trustee does not oppose abandonment, but rather agrees that the property is burdensome to the estate and should be abandoned.

Based on the foregoing, the Court finds that the Five Acre Tract is burdensome to the estate and of no value or benefit to the estate, and the motion to abandon the Five Acre Tract from the estate should be granted pursuant to Section 554(b), unless the law of the case doctrine prevents the Court from altering its previous rulings. However, to the extent either Debtor has an interest in the property, the automatic stay remains in effect as to the Debtors and property of the Debtors until further order of this Court.[18]

### C. Law of the Case Doctrine

Having found that the Movants' Third Motion for Relief should be granted to allow pursuit by Movants of their state law remedies as to the note and mortgage, including initiating an action to foreclose the mortgage on the Residence, and to allow abandonment of the Five Acre Tract,

dence, the continuing deterioration of the Residence, and the risk of loss due to vandalism.

18. The Movants did not request relief from stay as to the Five Acre Tract in the Third Motion for Relief. They requested only that the property be abandoned from the bankruptcy estate.

the Court next addresses the Debtors' argument that the "law of the case" doctrine prevents the Court from altering its previous orders.

 The law of the case doctrine "does not preclude adjudication of the matters before the Court, it merely governs and informs such adjudication." *Thornburg v. Lynch (In re Thornburg)*, 277 B.R. 719, 724 (Bankr.E.D.Tex.2002). Courts apply the law of the case doctrine to agreed orders involving the disposition of a motion for relief from stay. *See, e.g., Id.* at 719 (construing the law of the case doctrine in regard to an agreed order on a motion for relief from stay). "The law of the case doctrine applies to issues implicitly decided in earlier stages of the same case." *Little Earth of the United Tribes, Inc. v. United States Dep't of Housing & Urban Dev.*, 807 F.2d 1433 (8th Cir.1986) (citing *Gross v. United States*, 723 F.2d 609, 611 n. 1 (8th Cir.1983)). The orders should be analyzed applying ordinary rules of construction and should be "viewed as a whole." *Id.* at 1438. "[A]n interpretation that gives effect to all parts of the order will be preferred over one that leaves portions of the order meaningless or insignificant. *Id.* (citing *Johnson Controls, Inc. v. City of Cedar Rapids*, 713 F.2d 370, 374 (8th Cir. 1983)). To analyze the law of the case doctrine, the Court must first determine what issues were decided by the First and Second Relief Orders.

### 1. *First Relief Order*

By way of background, the First Motion for Relief was filed about four months after the bankruptcy case was filed. Prior to the bankruptcy filing, the state court had granted default judgment in favor of Mrs. Powell against Mr. Yarbrough. At the time of the bankruptcy filing, Mrs. Powell was in the process of requesting attorney fees and costs related to her $400,000 judgment, and Mr. Yarbrough was in the process of seeking to have the judgment set aside. The bankruptcy case was filed prior to a determination on these matters. In the First Motion for Relief, the Movants sought an order (1) granting Movants relief from stay to foreclose the mortgage held by Bee Jay's on the Residence, and (2) granting Mrs. Powell relief from stay to liquidate her pending request for attorney fees and costs. (First Mot. for Relief ¶¶ 2–3, Doc. No. 76).

The First Motion for Relief was not heard by this Court. Prior to the hearing the parties announced they had reached a settlement and would present an agreed order to the Court for signature and entry on the docket. Subsequently, on September 19, 2013, the First Relief Order, which was approved by the Debtors, Mrs. Powell, Mr. Robinson, and the Trustee, was entered. The First Relief Order granted the parties relief from stay to seek a determination by the state court as to Mrs. Powell's attorney fees and costs and to Mr. Yarbrough's motion to set aside the judgment. (First Relief Order, Doc. No. 136). The First Relief Order, which represented an agreement entered into prior to the Court's ruling on the objection to homestead exemption, denied relief from stay to foreclose the mortgage on the Debtors' homestead.[19]

Mr. Yarbrough focuses on the following portion of the agreed order in arguing the law of the case should continue to control:

---

19. Although the Court overruled the objection to exemptions by order entered on September 10, 2013, the parties announced that they had reached a settlement as to the First Motion for Relief prior to the hearing on the objection to exemption. Therefore, the settlement of the First Motion for Relief would have necessarily been reached prior to the parties' knowledge of the Court's ruling on Mrs. Powell's objection to exemption.

The Court further finds and orders that there shall be no collection efforts while the Pulaski Circuit Court is making its determination as to the judgment and as to any attorney fees and costs arising therefrom. The state court decision, when final under state law, shall be the final determination as to the amount of the judgment and as to the amount of any attorney fees and costs arising from the judgment. When those two matters are final under state law, this Court will conclude the issues that remain in this bankruptcy case.

(First Relief Order at 1–2, Doc. No. 136).

■■■ "An [a]greed [o]rder is a contract and its interpretation is governed by basic rules of contract construction." *In re Thornburg*, 277 B.R. at 726 (citing *In re Continental Airlines Corp.*, 907 F.2d 1500, 1508 n. 6 (5th Cir.1990); *Boatman v. Sullivan*, 1990 WL 146699 (N.D.Ill. Oct. 1, 1990); *In re 360 Inns, Ltd.*, 76 B.R. 573, 578 (Bankr.N.D.Tex.1987); *In re Delaney's II, Inc.*, 1991 WL 337625, *2 (N.D.Ill. 1991); *In re El Paso Refinery, L.P.*, 244 B.R. 613, 622 (Bankr.W.D.Tex.2000)). The terms of this contract are unambiguous. The parties agreed to return to state court to obtain rulings on Mrs. Powell's request for attorney fees and costs and Mr. Yarbrough's motion to set aside the judgment before proceeding further. Implicit in the contract is the agreement that while those matters were pending the parties would litigate the objection to the homestead exemption in bankruptcy court. Pursuant to the contract, the parties further agreed that the Movants would not be allowed to foreclose on the Residence claimed as exempt at that time, and pursuant to the Insurance Order entered on the same date as the First Relief Order, Mr. Yarbrough would keep the Residence insured.

Given the history of the relationship between the parties, the Court is not surprised that they included language in the order prohibiting collection efforts until the two rulings were obtained in the state court action. Indeed, even if not stated in the order, all property of the bankruptcy estate, all property of the Debtors, and the Debtors themselves remained protected from actions to collect prepetition debts pursuant to Section 362(a) of the Bankruptcy Code. The order was clear that once these two matters were decided by the state court (attorney fees and default judgment), the claims would then be collected through the bankruptcy process or by the state court subject to additional relief from stay being granted by this Court.

### 2. *Second Relief Order*

The Second Relief Order was entered by this Court on August 6, 2014, as a result of an oral request for a pre-hearing conference on the Second Motion for Relief. At this pre-hearing conference the primary issue was the meaning of the following sentence in the First Relief Order: "The state court decision, *when final under state law,* shall be the final determination as to the amount of the judgment and as to the amount of any attorney fees and costs arising from the judgment." (First Relief Order at 2, Doc. No. 136). By the time this pre-hearing conference was held, Mrs. Powell's request for attorney fees and costs had been denied, Mr. Yarbrough's motion to set aside the default judgment had been denied, and Mr. Yarbrough's various post-hearing motions to dismiss the complaints against him had also been denied. The rulings denying Mrs. Powell's request for attorney fees and costs and denying Mr. Yarbrough's post-hearing motions were on appeal before the Arkansas Court of Appeals. The Movants argued in support of their Second Motion for Relief that the orders denying both state court motions were "final orders" and argued that collection efforts could resume. This

Court[20] questioned the parties about whether the validity of the mortgage was subject to the state court action and the parties indicated that it was indeed involved in the state court action. No evidence was presented. The Court, believing a ruling on the validity of the mortgage would be necessary to deciding the issues raised by the Second Motion for Relief, stated:

> The [Second Motion for Relief] at issue was filed on June 18, 2014, and sought relief from the stay to allow Bee Jay's to foreclose on a mortgage it holds on the Debtors' homestead. The [Second Motion for Relief] also sought abandonment of two other pieces of property on which [Jane] Powell holds a judicial lien. Both the validity of the mortgage held by Bee Jay's and the judgment supporting [Jane] Powell's judicial lien are the subject of the pending appeal in State Court.

(Second Relief Order at 2, Doc. No. 194).

According to the record, however, the issues on appeal were only the denial of Mrs. Powell's award of attorney fees and the denial of Mr. Yarbrough's post-hearing motions to dismiss the complaints against him (resulting in the judgment not being set aside). *See Yarbrough v. Powell,* 2015 Ark. App. 218, at 1, 459 S.W.3d at 330. Whether other allegations had (or have) been raised attacking the validity of the mortgage in the state court action is not revealed by any evidence before this Court. In clarifying the First Relief Order in the context of the arguments presented by counsel at the pre-hearing conference, this Court held that:

> Sutter argued that the Circuit Court ruling[s] denying Debtor's efforts to set aside the $400,000 judgment are final under Arkansas law and should be afforded *res judicata* effect, and that it would be more efficient to allow the

foreclosure and issues related to the other pieces of property to proceed in State Court without the involvement of the Trustee. Sutter also argued that the [Second Motion for Relief] filed by Bee Jay's was not stayed by the September 19, 2013 Order. Having considered those arguments, the Court orally ruled that when entering the Order, which was agreed to by the parties, it was the Court's intent to stay these matters until a final unappealable decision had been made in State Court.

(Second Relief Order at 3, Doc. No. 194).

At the time of the pre-hearing conference and of the entry of the Second Relief Order, both the order denying Mrs. Powell's attorney fees and the order denying Mr. Yarbrough's post-hearing motions were on appeal to the Arkansas Court of Appeals. This Court clearly believed that a ruling on the Second Motion for Relief would require ruling on issues then pending on appeal or issues otherwise involved in the state court action. Neither the Court nor apparently the parties had any reason to believe that the issues would not be resolved by the then pending appeals before the Arkansas Court of Appeals. Based on this belief, the Court then found that:

> [I]t would be a waste of estate and judicial resources to hear the [Second Motion for Relief] while these issues are pending in State Court. While the status of [Jane] Powell and Bee Jay's as secured creditors is pending in State Court, the Court cannot afford them the relief they seek. Granting relief from stay could lead to inconsistent rulings and irreparable harm to this estate, and needlessly incur additional litigation expenses by litigating issues in this Court that may be entirely moot once the State Court appellate process is complete.

---

20. Honorable Audrey R. Evans presiding.

(Second Relief Order at 3–4, Doc. No.194). This Court believes and, therefore, finds, that all the parties believed the orders on appeal were final orders and a decision would be forthcoming within a reasonable time.

The "[l]aw of the case is a doctrine of discretion, not a command to the courts." *Little Earth*, 807 F.2d at 1440 (citing *Arizona v. California*, 460 U.S. 605, 618, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983); *In re Exterior Siding & Aluminum Coil*, 696 F.2d 613, 616 (8th Cir.1982), *vacated*, 705 F.2d 980 (8th Cir.1983) (en banc)). "The law of the case doctrine posits that '[w]hen a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" *Royal v. First Interstate Bank (In re Trierweiler)*, 484 B.R. 783, 798 (10th Cir. BAP 2012) (quoting *Mason v. Texaco, Inc.*, 948 F.2d 1546, 1553 (10th Cir.1991)), *aff'd*, 570 Fed.Appx. 766 (10th Cir.2014). "It 'applies to issues previously decided, either explicitly or by necessary implication.'" *Id.* (quoting *Guidry v. Sheet Metal Workers Int'l Ass'n*, 10 F.3d 700, 705–06 (10th Cir.1993)). The doctrine has been described as a "policy of deference under which 'a court should not re-open issues decided in earlier stages of the same litigation.'" *Myers v. Raynor (In re Raynor)*, 406 B.R. 375, 379 (8th Cir. BAP 2009) (quoting *Agostini v. Felton*, 521 U.S. 203, 236, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997); *Little Earth*, 807 F.2d at 1438), *aff'd*, 617 F.3d 1065 (8th Cir.2010). However, the Eighth Circuit has recognized that "'changed circumstances' may provide a basis for departing from the law of the case." *Little Earth*, 807 F.2d at 1441 (citing *In re Exterior Siding & Aluminum Coil*, 696 F.2d at 617). Departing from the law of the case is also permitted when a manifest injustice would result otherwise. *In re Raynor*, 406 B.R. at 379 (citing *Little Earth*, 807 F.2d at 1441; *Woods v. Kenan (In re Woods)*, 215 B.R. 623, 625 (10th Cir.

BAP 1998); 5 AM. JUR. 2D, *Appellate Review* § 566 (2008)).

### D. Changed Circumstances or Manifest Injustice

#### 1. *Pursuing Foreclosure of Mortgage on Residence*

As to the Movants' request for relief from stay to pursue their state law remedies related to the note and mortgage, including pursuing foreclosure of the mortgage on the Residence, the Court finds that the law of the case doctrine applies. However, the Court may revisit provisions in previous orders if changed circumstances warrant or a manifest injustice results from enforcement of a previous order. The Movants argue that circumstances have changed in three respects: The Arkansas Court of Appeals unexpectedly dismissed the state court appeal and cross-appeal for lack of final orders; Mr. Yarbrough has failed to maintain insurance on the Residence as ordered; and the uninhabited Residence has suffered significant deterioration.

The Debtors contend that this Court should continue to stay collections, including foreclosure of the mortgage, because then the state court would have "no alternative [but to] ... re-word [the] 400,000 dollar judgment where the Circuit Court ordered that the assets of Bee Jay's were to be wound up...." (June Tr. at 73). The Debtors further argue that the "simple, easy thing" would be for the Movants to non-suit the causes of action the Arkansas Court of Appeals ruled were necessary to be resolved for a final, appealable order. (June Tr. at 73).

This Court finds the Debtors' arguments vacuous and agrees with Movants' first argument that the Arkansas Court of Appeals order constitutes a changed circumstance. The Court observes that the Arkansas Court of Appeals' decision was

delivered on April 8, 2015, almost a year and seven months after the First Relief Order and eight months after the Second Relief Order. It provided that:

> [T]he circuit court ordered an accounting with regard to Bee Jay's and ordered the receiver to marshal Bee Jay's assets and wind up the corporation. No order in the record reveals that those actions have yet taken place. Thus, further actions by the parties and the court are necessary to resolve the claims in the case, and we do not yet have a final order.

*Yarbrough v. Powell*, 2015 Ark. App. 218, at 4, 459 S.W.3d at 332.

This Court has already found that when the Second Relief Order was entered, the parties believed the state court orders on appeal were final orders and did not expect the appeals to be dismissed for lack of finality. At the hearing, Mr. Sutter stated that the decision from the Arkansas Court of Appeals "came out of the blue." (April Tr. at 26). The appellate court found there was no final order in part because there was no evidence in the record of the wind up of Bee Jay's. Mr. Robinson, the court-appointed receiver for Bee Jay's, testified that in order to wind up the corporation, Bee Jay's would need to liquidate the final asset of the corporation, which is the note secured by the mortgage the company asserts it holds against the Debtors' Residence. For this reason, the Court finds that this changed circumstance supports a departure from its prior orders.

Second, the Movants argued that changed circumstances exist because of the Debtors' failure to maintain insurance on the Residence. The Insurance Order, which was entered the same day the First Relief Order was entered, provided that the Debtors would maintain insurance on the Residence and would name Bee Jay's as a loss payee on the insurance policy. (Insurance Order, Doc No. 135). The Sec-

ond Relief Order was entered without a prior hearing on the Second Motion for Relief; therefore, no evidence was adduced to show whether the Debtors were in compliance with the Insurance Order, although the Debtors stated in their response to the Second Motion for Relief that the property was "properly insured." (Debtors' Resp. to Second Mot. for Relief ¶ 7, Doc. No. 172). At the hearing on the Third Motion for Relief, the Movants proved the Debtors were no longer in compliance with the Insurance Order; Terry Yarbrough admitted he does not have insurance on the Residence and has no income or funds to purchase insurance on the Residence. The Debtors' failure to comply with the Insurance Order is another changed circumstance supporting the Court's departure from the law of the case doctrine.

Third, the Movants proved significant deterioration of the Residence. Mr. Upshaw testified that he had inspected the Residence a "couple of years ago" in the Fall of 2012, and although there were no signs of anyone living there at that time, the Residence "was in much better general condition" than when he inspected the Residence a month before the hearing. (June Tr. at 36). Mr. Upshaw also stated that since the Fall of 2012 there are "a lot more windows that have been busted out" and mold and mildew are now evident in the Residence. (June Tr. at 36). This Court finds that the deterioration of the Residence constitutes a third significant change in circumstances that warrants a deviation from the two prior orders barring Movants from pursuing their remedies related to the Residence.

Movants also argue they are in a "Catch–22" situation because they cannot obtain a final order until the mortgage is foreclosed and business wound up, but this Court's prior orders will not allow foreclo-

sure until there is a final order. The Movants argue the situation results in a manifest injustice. (April Tr. at 40; June Tr. at 69–70, 90). The Court agrees that its previous orders unreasonably restrict the Movants from pursuing the final state court order they were allowed to pursue by this Court and that the resulting quandary is a manifest injustice. As such, the Court finds grounds to revisit its previous orders.

For the reasons stated in Part A.2, above, Movants are granted relief from stay to pursue their state law remedies as to the note and mortgage, including initiating an action in state court to foreclose the mortgage, as further stated below. The Debtors rebutted the Movants' claim with arguments and testimony regarding their position on the enforceability of the note and mortgage. Granting relief from stay will allow all the parties the opportunity to present this matter to the state court for final disposition. To assist in achieving the finality sought by all parties, the Court grants relief from stay to the Movants to seek foreclosure of the mortgage and to seek both an *in rem* judgment against the Residence and an *in personam* judgment against Mr. Yarbrough. However, in the event an *in personam* judgment is entered against Mr. Yarbrough in favor of either or both of the Movants, the collection of the *in personam* judgment (or the deficiency judgment after foreclosure sale) is stayed. Such claim is to be administered through the bankruptcy estate until further order of this Court. No personal judgment may be sought against Trace Yarbrough because of the order of discharge[21] entered in this bankruptcy proceeding as to Trace Yarbrough only. She may be named as a nominal defendant to

the extent she may have an interest in the Residence.

### 2. *Five Acre Tract*

█ As to the Movants' request for abandonment of the Five Acre Tract, this Court finds that the law of the case doctrine does not apply. The Movants first requested abandonment of the Five Acre Tract, to which they claim the judgment lien attaches, in the Second Motion for Relief. It was not requested prior to the entry of the First Relief Order. The Second Motion for Relief was not heard by the Court, but rather was continued after the Court held a pre-trial hearing on the motion. The Second Relief Order did not specifically address abandonment of the Five Acre Tract, although the Court reiterated that any collection efforts would be stayed until the matters before the state court were final and nonappealable.

Because the Second Motion for Relief was not heard and the Second Relief Order did not specifically address abandonment of the Five Acre Tract, this Court has not previously determined whether the Five Acre Tract should be abandoned. The law of the case doctrine does not apply. Therefore, for the reasons stated in Part B, above, the Five Acre Tract should be abandoned from the estate.

### 3. *Collection of the $400,000 State Court Judgment*

█ While the Court finds that the stay should be lifted to allow Movants to pursue their remedies as to the note and mortgage, and that the Five Acre Tract should be abandoned, the Court finds that the law of the case doctrine precludes the Court from revisiting its prior orders barring collection of the $400,000 judgment.

---

21. An order discharging Trace Poole Yarbrough only was entered on September 22, 2015. (Doc. No. 224).

The First Relief Order and Second Relief Order barred collection of the $400,000 judgment while issues concerning the validity of the $400,000 judgment remained pending before the state court. The Court finds no changed circumstances warranting a deviation from its previous orders enforcing the stay against Mrs. Powell to proceed with execution of the $400,000 judgment. The judgment represents a pre-petition debt and upon its entry became a judicial lien on property owned by Mr. Yarbrough in the county in which the judgment was rendered. *See* A.C.A. § 16–65–117 (1987). The Debtors have filed a motion to avoid the judicial lien as impairing their homestead exemption. (Mot. to Avoid Lien, Doc. No. 69). The Trustee has filed an adversary proceeding involving the Twenty Acres, which alleges an interest in that property for the bankruptcy estate. (*Dowden v. Yarbrough*, AP No. 4:14–ap–01120 (filed Dec. 8, 2014); *see also*, Doc. No. 203). The Debtors have objected to claims filed by Mrs. Powell based on the $400,000 judgment. (Debtors' Objection to Claim, Doc. No. 112; Debtors' Objection to Claim, Doc. No. 115). In addition, the Debtors have objected to the claim filed by Mr. Sutter for attorney fees related to the $400,000 judgment. (Debtors' Objection to Claim, Doc. No. 116). These bankruptcy matters have been held in abeyance awaiting a final, nonappealable ruling on the validity of the $400,000 judgment. This Court agrees with the prior orders that no collection efforts *with respect to the $400,000 judgment* should occur until there is a final, nonappealable order determining the validity of the $400,000 judgment and until further order of this Court allowing such collection efforts.

For these reasons, this Court reaffirms its previous orders and holds that all actions to collect or execute on the $400,000 judgment are stayed pending further order of this Court.

## V. CONCLUSION

For the reasons stated above, the Third Motion for Relief is granted, in part, and denied, in part. The Movants are granted relief from stay to pursue their state law remedies as to the note and mortgage in order to wind up the business of Bee Jay's, including pursuit of foreclosure of the mortgage and pursuit of both *in rem* and *in personam* judgments, except that no personal judgment may be obtained against Trace Poole Yarbrough due to the entry of the discharge and no collection actions may be taken as to any judgment obtained against Mr. Yarbrough without further order of this Court.

In addition, the Five Acre Tract should be and hereby is abandoned from the bankruptcy estate. However, to the extent either Debtor has an interest in the property, the automatic stay continues in effect as to the Debtors and property of the Debtors until further order of this Court.

It is further ordered that Mrs. Powell continues to be barred by the First Relief Order and Second Relief Order from collecting or executing on the $400,000 judgment until a final, nonappealable decision has been made by the state court as to the validity of the judgment.

In the Third Motion for Relief, the Movants sought relief from stay to pursue contempt proceedings. Neither Movants nor the Debtors presented any evidence with regard to this request, and, therefore, it is denied.

Any request for relief not specifically addressed by this order is denied, including the portion of the Third Motion for Relief requesting a scheduling order, which is denied as moot.

Nothing in this order is intended to make any finding or conclusion as to the enforceability and validity of the note and

672

mortgage on the Residence, or the $400,000 judgment.

It is the Court's intention that the relief granted herein will enable the parties to litigate and have the issues before the state court decided and determined by final, nonappealable orders. In the event the parties determine later that additional relief from stay may be necessary to reach this result, this order is without prejudice to any of the parties filing additional motions for relief from stay for consideration.

**IT IS SO ORDERED.**